## UNITED ARTISTS CORPORATION v. JAMES.

### No. 3624.

District Court, S. D. West Virginia, at Charleston.

May 20, 1938.

E. W. Knight and R. G. Kelly, both of Charleston, W. Va., for plaintiff.

Clarence W. Meadows, Atty. Gen., of West Virginia, and Forrest B. Poling, Asst. Atty. Gen., for defendant.

Before NORTHCOTT, Circuit Judge, and McCLINTIC and HARRY E. WATKINS, District Judges.

McCLINTIC, District Judge.

The Court makes the following findings of fact and conclusions of law:

Findings of Fact

There is no dispute as to the facts as they were stipulated. The stipulation shows the following material facts.

The Plaintiff, United Artists Corporation, a corporation, is one created under the laws of the State of Delaware, with its principal office and chief place of business located in the City of New York in the State of New York.

The defendant, Ernest K. James, at the time of the submission of this suit, was the Acting Tax Commissioner of the State of West Virginia (successor to Fred

L. Fox, set out in the bill herein as Tax Commissioner). He is now the duly appointed and qualified Tax Commissioner. He is a citizen and resident of the City of Charleston, Kanawha County, West Virginia, and of the Southern Judicial District of West Virginia, and as such Tax Commissioner is charged with the duty of collecting taxes for the State of West Virginia and administering and enforcing the tax laws of the State of West Virginia.

This is a suit of a civil nature in equity. The controversy involved therein is wholly between citizens of different states, and the amount in controversy therein exceeds three-thousand dollars, exclusive of interest and costs.

The plaintiff is engaged in the business of distributing motion pictures from its place of business in the State of New York to exhibitors of motion pictures in practically every state of the United States, including the State of West Virginia.

The plaintiff has no place of business, office, agents or employees in West Virginia, and owns no property in West Virginia other than such of its films as are temporarily within West Virginia for exhibition purposes.

The plaintiff maintains branch offices in certain cities of the United States, including the Cities of Cincinnati in the State of Ohio, Pittsburgh in the State of Pennsylvania and Washington in the District of Columbia, but no office of any kind is maintained in the State of West Virginia.

The method of doing business between the plaintiff and West Virginia exhibitors is as follows: The plaintiff makes public announcement from time to time of motion pictures that it has or will have for release. Theatre owners or managers who desire to exhibit motion pictures that the plaintiff has or expects to have for distribution make written application in the form of an offer to the plaintiff at its place of business in New York, usually through the representatives of one of the three branches above named, for a certain picture or for a number of certain pictures or for a number of pictures to be selected by the exhibitor.

The plaintiff, through its proper officers or representatives at its main office in the City of New York, rejects or accepts such application and offer. When such application and offer is accepted a contract is made by executing upon such application and offer an acceptance thereof in the State of New York and returning such contract, composed of the application and offer and such acceptance, to the said exhibitor.

Such contract provides that the motion picture films therein specified or to be selected as therein provided for will at the time or times specified or provided for be sent by the plaintiff to the exhibitor, who is by the contract authorized to exhibit such films for a number of days fixed by the contract, which period of time is usually for one day or for seven days or for some intermediate number of days. The contract provides that the exhibitor will pay the plaintiff for the right to exhibit such films, which payment is sometimes fixed by the contract as a specified sum of money and sometimes as a specified percentage of the receipts from theatre admissions during the day or days when said picture is exhibited. The contract further provides that the exhibitor at the end of such period will ship said film or films by a carrier designated or used by plaintiff, to some other exhibitor, who is usually outside of the State of West Virginia, or to the Cincinnati office of the plaintiff, or to the Pittsburgh or Washington office of the plaintiff, whichever shipped the film to the exhibitor, such shipment in any event to be at the direction of the plaintiff, and such films are always finally returned to the plaintiff in New York or at some point without the State of West Virginia.

Pursuant to said contract the plaintiff sends the films from one of said branch offices without the State of West Virginia by express or parcel post or other carrier to the exhibitor in West Virginia. Such exhibitor then exhibits such films in ordinary motion picture theatres, and charges an admission fee to such of the public as desire to see such exhibition. When the use of the pictures is completed according to the contract they are reshipped on advices given by the plaintiff. Usually said contracts are sent by the New York office of the plaintiff to its said Cincinnati or Washington, D. C., or Pittsburgh office, and by said office to West Virginia exhibitors. There are a large number of exhibitors of plaintiff's films in the cities and towns of West Virginia,

such films being exhibited in nearly all the counties in said State. All prints and films of the motion pictures licensed for exhibition by exhibitors in West Virginia are manufactured and made in laboratories in the State of California, and all of such prints and films are sent from California to Cincinnati, Pittsburgh, and Washington and thence to exhibitors in West Virginia. Always the contracts are made in New York, the films are produced and owned outside the State of West Virginia, and the films are shipped from without the State of West Virginia into the State of West Virginia to the exhibitor and are afterwards again shipped out of the State of West Virginia, and payments by the exhibitor are sent to and received by plaintiff without the State.

The plaintiff employs a representative who comes into the State of West Virginia regularly and spends approximately one-half of his employed time in said State encouraging and soliciting various theatre managers or owners therein to exhibit the plaintiff's films, and in doing so, it is the custom and practice of said representative to exhibit to said theatre managers or owners the public announcements of the motion pictures the plaintiff has or will have for release and distribution, and to procure the signatures of said theatre managers or owners to written applications in the form of offers to the plaintiff at its place of business in New York.

The plaintiff does not designate and has never designated exhibitors in West Virginia to act as its agents for the purpose of shipping films to other exhibitors in West Virginia. On two occasions in the year 1936 it requested an exhibitor to forward a film to another exhibitor within the state, which other exhibitor then returned the film in each instance to the plaintiff without the state.

On all other occasions in 1936 films were returned by exhibitors directly to the plaintiff without the state. During the year 1936 the plaintiff made a total of fifteen hundred and forty-six shipments of films into West Virginia, to one-hundred and forty-four theatres, all of which shipments were returned to the plaintiff without the state.

The plaintiff did not, in 1936 or any other year, permit any exhibitor to exhibit a picture for a longer time than the period specified in a contract, unless such exhibitor made a formal request for such privilege and unless such request was officially approved in New York and unless the exhibitor paid additional compensation for such additional time.

During the year 1936 the plaintiff caused the admissions to theatres in the State of West Virginia to be checked on eight separate occasions, which checks were made for the purpose of ascertaining the receipts from theatre admissions during the day or days when the pictures of the plaintiff were being exhibited therein, in order to arrive at the correct amount due to the plaintiff from the exhibitor on a percentage basis for the privilege of exhibiting plaintiff's pictures by said exhibitor. These checks were all made by an independent contractor under an arrangement between the plaintiff and the exhibitor.

By article 13 of chapter 11, section 959 et seq., of the West Virginia Code of 1932, as amended and in effect from March 9, 1935, Acts 1935, c. 86, such article dealing with the Business and Occupation Tax of West Virginia, it is provided that (section 2-(h) a tax equal to one percent of gross income is levied upon and shall be collected from every person engaging or continuing within the State in any service business or calling not otherwise specifically taxed under said law; that (section 2-(i) upon every person engaging or continuing within the State of West Virginia in the business of collecting incomes from the use of real or personal property or of any interest therein, whether by lease, conveyance, or otherwise, and whether the return be in the form of rentals, royalties, fees, interest, or otherwise, the tax shall be one percent of the gross income of any such activity; that (section 4) taxes levied under said article 13, as enacted by Acts 1933, 1st Ex.Sess. c. 33, p. 227, shall be payable in quarterly installments on or before the expiration of thirty days from the end of the quarter in which they accrue, and the taxpayer shall within thirty days from the expiration of each quarter make out an estimate of the tax for which he is liable for such quarter, verify the same by oath and mail the same, together with a remittance in the form required, to the office of the defendant; that (section 5, p. 227) on or before thirty days after the end of the tax year each person liable for the payment of any such tax shall make a return showing the gross proceeds of

sales or gross income of business, compute the amount of tax chargeable against him in accordance with the provisions of said article, deduct the amount of quarterly payments, if any, and transmit with his report a remittance in the required form covering the residue of the tax chargeable against him to the defendant.

Such article further provides that (section 7, p. 228) if any person fail or refuse to make return, or if the Tax Commissioner has reasonable ground to believe that any return made is so deficient as not to form the basis of a satisfactory assessment of tax, the Tax Commissioner may proceed as he deems best to obtain information on which to base the assessment of the tax, shall assess the tax and notify the person assessed of the amount of the tax; and the assessment of the tax by the Tax Commissioner shall be final as to any person who refused to make a return.

Such article further provides that (section 8, p. 229) any person, having made the return and paid the tax as provided therein, who feels aggrieved by the assessment made upon him, may apply to the Board of Public Works within thirty days after notice is mailed to him by the Tax Commissioner for a hearing and correction of the amount of the tax so assessed against him, said Board may grant or deny such hearing, and upon a hearing, if granted, may make such order as shall appear to it just and lawful; any person improperly charged with any tax and required to pay the same may recover the amount paid, together with interest, in any proper action or suit against the Tax Commissioner, and the Circuit Court of the County in which the taxpayer resides or is located shall have original jurisdiction of any such action and shall adjudge costs to such extent and in such manner as may be deemed equitable, and upon presentation of a certified copy of a judgment in any such action the Auditor of the State of West Virginia shall issue his warrant upon any funds in the State Treasury available for the payment thereof; no injunction shall be awarded to restrain the collection of taxes imposed thereby except upon the ground that the assessment thereof was in violation of the Constitution of the United States or the Constitution of the State of West Virginia, or that the same were fraudulently assessed, or that there was a mistake made in the amount of taxes assessed upon such person, and in the latter case the bill must show an application to the Board of Public Works for the correction of the assessment and the payment into the treasury of all taxes appearing by the bill of complaint to be owing.

Such article further provides that (section 9, p. 230) the assessment of taxes and the returns required shall be for the year ending on the 31st day of December; that (section 11, p. 230) all remittances of taxes imposed thereby shall be made to the Tax Commissioner and he shall pay the moneys into the state treasury to be kept and accounted for as provided by law; that (section 12, p. 231) a tax due and unpaid thereunder shall be a debt due the State and a lien upon the property used in the business or occupation upon which it is imposed, such lien shall have the same priority as the lien of the general property tax, a penalty of five percent shall be added for any default for thirty days or less, and for each succeeding thirty days of such default there shall be added an additional penalty of one percent; that (section 13, p. 231) the Tax Commissioner may collect taxes due and unpaid thereunder, together with all accrued penalties, by an action in assumpsit, motion for judgment, or other appropriate proceedings in the Circuit Court of the County in which the privilege taxed has been exercised; and in the event of default in payment of the tax for sixty days after the same shall be due the Tax Commissioner may proceed in the Circuit Court of the County in which the privilege taxed has been exercised to obtain an injunction restraining the further exercise of the privilege until full payment of all taxes and penalties due under said article; that (section 20, p. 233) the Tax Commissioner may distrain upon any goods, chattels, or intangibles of any taxpayer delinquent under said article for the amount of all taxes and penalties accrued and unpaid thereunder, and he is authorized to require the assistance of the sheriff of any county of the state in levying such distress in the county of which such sheriff is an officer.

Such article further provides that (section 21, p. 233) it shall be unlawful, under penalty of a fine not exceeding one-thousand dollars and imprisonment not exceeding one year, for any person to refuse to make the return provided for therein, or make any false or fraudulent

return or false statement in any return with intent to defraud the state or to evade the payment of the tax or any part thereof imposed thereby, or for any person to aid or abet another in any attempt to evade the payment of such tax, or for an officer of any corporation to make or permit to be made for any corporation any false return or false statement in any return required thereby, with intent to evade the payment of any tax thereunder.

Chapter 1 of the Acts of the Extraordinary Session of the Legislature of West Virginia, effective July 1st, 1925, imposed (section 2-(g) a tax of three-tenths of one percent of the gross income of any business not included in businesses enumerated in the statute, and this provision became section 2(g) of said article 13 of chapter 11 of the West Virginia Code of 1932, and pursuant to amendment made by chapter 33, page 225, of the Acts of the Legislature of 1933, 1st Ex.Sess., effective May 26, 1933, the substance of said provision became section 2-(h) of said article 13 as now in effect, with an increase of the tax imposed to one percent of the gross income of any such business. And under each such statute or provisions of the Code an assessment of tax by the Tax Commissioner was final as to any person who had failed or refused to make a return for the purposes of the tax.

The plaintiff, under its view of the case, has never made any of the estimates, reports or returns required by the Code of West Virginia, as amended and now in effect, or by any previous statute to be made by persons engaged in business in West Virginia.

The defendant, under its view of the case, made an assessment of the tax against the plaintiff, as of October 1st, 1936, of the sum of four-thousand and two dollars and nineteen cents, and demanded the payment of such sum as a tax under the statute, and claims that the plaintiff should pay such tax upon all such sums as it may receive in West Virginia from exhibitors of its films after October 1st, 1936.

The defendant has threatened and now threatens to undertake to enforce the collection of the amount of the tax assessed by him, with all accrued penalties and those to accrue, and for the purpose to bring against the plaintiff actions at law in the counties, or some of them, in which plaintiff's films have been and from time to time are being shown, and in such actions to sue out attachments and to make the exhibitors of plaintiff's films garnishees thereunder, and to distrain plaintiff's films in the possession from time to time of exhibitors in the State of West Virginia, and further threatened that if plaintiff shall refuse for sixty days to pay the amount of the tax assessed, to institute suits in chancery in the courts of the counties of West Virginia in which the plaintiff's films have been and from time to time are being shown, for an injunction to restrain the further showing of such films until full payment shall be made of all the taxes and penalties claimed by the defendant to be due.

The defendant also threatens to repeat and continue such suits and attachments until he has collected all such taxes and penalties, and also threatens to harass and annoy the exhibitors by the service of notices of garnishment upon them, by seizing under distraint films in their hands from time to time, and by enjoining the showing of plaintiff's films by such exhibitors until the plaintiff has paid the taxes so assessed.

## Conclusions of Law

The Court concludes that there is involved in this suit the necessary amount to give the District Court of the United States for the Southern District of West Virginia jurisdiction of the cause; that the plaintiff has no adequate remedy at law, and that a court of equity has jurisdiction of the issue; that the plaintiff never has been and is not now engaged within the State of West Virginia in the business of collecting incomes from the use of real or personal property or interest therein, whether by lease, conveyance or otherwise, and whether the return be in the form of rents, royalties, fees, interest or otherwise; and that the acts of the plaintiff hereinbefore set out constitute "interstate commerce".

## Opinion

This is a suit in equity brought by the plaintiff seeking to restrain the collection of certain taxes sought to be imposed by the State of West Virginia. A District Court of three Judges, organized in accordance with section 266 of the Judicial Code, as amended (28 U.S.C.A. § 380) heard the case on plaintiff's application for interlocutory and permanent relief.

At the hearing no evidence was taken, the cause being submitted on the stipulation of facts. It was agreed that the hearing should be final.

The tax sought to be imposed upon the plaintiff is a tax of one percent of the gross income received by the plaintiff from the exhibitors of its films in the State of West Virginia.

In the case of Paramount Pictures Distributing Company et al. v. Henneford, et al., 184 Wash. 376, 51 P.2d 385, writ of certiorari denied by Supreme Court, 298 U.S. 665, 56 S.Ct. 747, 80 L.Ed. 1389, the court, in reference to the exact same sort of tax, under a similar statute and between a film company and a Tax Commissioner, said (page 387 of 51 P.2d):

"* * * The tax provided for in the statute is an excise tax, and not a property tax. It is based upon a percentage of the gross income of a particular business. State ex rel. Stiner v. Yelle, 174 Wash. 402, 25 P.(2d) 91; Supply Laundry Co. v. Jenner, 178 Wash. 72, 34 P.(2d) 363. It being an excise tax for the purpose of raising revenue, the act of the Legislature imposing it was not passed in the exercise of the police power. Whether a law is enacted in the exercise of that power depends upon whether the primary purpose is to raise revenue or to regulate industry. If the primary purpose is regulation, it is enacted under the police power, even though it may be called a license or tax. Fox Film Corporation v. Trumbull, D.C., 7 F.2d 715; Cooley on Taxation 3d Ed., Vol. 2, p. 1127. As already indicated, chapter 191 of the Laws of 1933 and the amendatory acts thereto were plainly enacted for the primary purpose of collecting revenue, and not for the purpose of regulating industry. Cases cited, which hold that the state Legislature, in the exercise of the police power, may regulate to some extent a business which is interstate in character, have no application to this case.

"Inquiry will not be directed as to whether the business done by the local exchange, in the manner above indicated, is a part of interstate commerce. This presents a federal question, and is controlled by the case of Binderup v. Pathe Exchange, 263 U.S. 291, 44 S.Ct. 96, 68 L.Ed. 308. In that case, New York manufacturers and distributors of motion picture films, in the regular course of their business, shipped the films from the state of New York to the state of Nebraska and delivered them to a Nebraska resident, through a local agent of the manufacturers in that state, and it was there held that the business of the manufacturers and producers of the films and their transactions with the exhibitors were interstate commerce, notwithstanding that in accordance with the contracts the films were delivered through a local exchange in Nebraska through which they were first consigned and transported."

The opinion in this case then quotes at length from the Binderup Case, which was held as binding upon it so far as the doctrine of interstate commerce is concerned.

We agree with this holding.

The defendant attempts to draw a distinction between anti-trust cases and tax cases, claiming that while the former may be interstate commerce, the latter is not necessarily so. No real authority is cited for this claim, and under all the authorities to the contrary and the facts here, we are unable to agree with this alleged distinction.

The contention of the defendant that the plaintiff had an adequate administrative remedy is, in our opinion, not tenable. The law quoted heretofore gives the right to pay the tax and sue the Tax Commissioner for its recovery. This remedy, if it can be called such, would be judicial and a Federal Court would have jurisdiction when the other essentials thereof are present.

The defendant further contends that the plaintiff lost any right, when it did not make a return and pay the assessed tax.

If the tax was unlawful, then the plaintiff was not required to pay it and go into a State Court for its recovery (when it has a right to resort to a Federal Court) and if judgment for the recovery of the tax is obtained, to then wait until a legislature, of its own free will, sees fit to appropriate money for the refund.

The Tax Commissioner was required to pay any money collected into the State Treasury immediately upon its receipt, and only the act of an independent legislature, which meets every two years for a constitutional period of sixty days, can take it out.

Since writing the foregoing Opinion the Supreme Court of West Virginia, in the case of Charleston National Bank, et al. v. Fred L. Fox, 194 S.E. 4, has had be-

fore it for consideration whether chapter 87 of the Acts of the Legislature, Regular Session, 1935, providing for the refund of taxes collected and improperly required to be paid by the State Tax Commissioner, had been validly passed by the Legislature.

The Court decided in an opinion filed November 23d, 1937, Charleston Nat. Bank v. Fox, supra, that it had not been validly enacted and was of no effect. As we see it, this only strengthens our conclusion above.