## JAMES *v.* UNITED ARTISTS CORP.

No. 161.   Argued December 8, 9, 1938.—Decided January 3, 1939.

*Mr. Clarence W. Meadows,* Attorney General of West Virginia, with whom *Mr. W. Holt Wooddell,* Assistant Attorney General, was on the brief, for appellant.

*Mr. Robert G. Kelly* for appellee.

By leave of Court, *Messrs. G. W. Hamilton,* Attorney General of Washington, and *R. G. Sharpe,* Assistant Attorney General, filed a brief, as *amici curiae,* on behalf of the State of Washington, in support of appellant.

MR. JUSTICE STONE delivered the opinion of the Court.

This appeal requires consideration of but a single question: whether appellee is subject to the provisions of a statute of West Virginia which lays a tax, measured by gross receipts, "Upon every person [including corporations] engaging . . . within this state in the business of collecting incomes from the use of real or personal property. . . ."

Appellee, a Delaware corporation, having an office and its principal place of business in New York City, brought the present suit in the District Court for southern West Virginia against appellant, a West Virginia tax official, to restrain collection of a tax imposed by Article 13 of Chapter 11 of the West Virginia Code, as amended March 9, 1935, by c. 86, West Virginia Laws of 1935, on the ground that the appellee was not, by the terms of the statute, subject to the tax, and that the tax was an unconstitutional burden on interstate commerce.[1]

---

[1] The suit was begun before the enactment on August 21, 1937, of the amendment to § 24 of the Judicial Code, 50 Stat. 738, providing that "no district court shall have jurisdiction of any suit to enjoin, suspend, or restrain the assessment, levy, or collection of any tax imposed by or pursuant to the laws of any State where a plain, speedy, and efficient remedy may be had at law or in equity in the courts of such State." Section 2 of the Act excludes from its operation suits begun in the district courts before its enactment.

The district court, three judges sitting, adopted as its findings the facts as stipulated. It found that the amount of the tax exceeded $3,000 and that such judicial remedy as there was under West Virginia law for recovery of the tax, if paid, was not enforceable at law in the federal courts, and that by reason of penalties for nonpayment, some of which were cumulative, appellee was without adequate legal remedy. The court concluded that appellee was not doing business in West Virginia or engaged there in the business of collecting income from the use of personal property, within the meaning of the applicable taxing act, and that the attempted tax was an unconstitutional burden on interstate commerce, and decreed that collection of the tax be permanently enjoined. 23 F. Supp. 353. The case comes here on appeal under § 266 of the Judicial Code, 28 U. S. C. § 380.

Section 2 of Article 13, c. 11, of the West Virginia Code, as amended, lays annual privilege taxes upon various businesses and activities carried on within the state. Section 2(g) imposes a tax of one-half of one per cent. of the gross income derived from the business of operating a theatre or moving picture show. Section 2(h) taxes the gross receipts of every person engaging within the state in any business not otherwise specifically taxed, and § 2(i) levies upon "every person engaging . . . within this state in the business of collecting incomes from the use of real or personal property" a tax of one per cent. "of the gross income of any such activity."

Appellee is engaged in the business of distributing motion picture films for exhibition in theatres in various states, including West Virginia. It maintains branch offices in Ohio, Pennsylvania, and the District of Columbia, but has no office or place of business in West Virginia, and has no agents or employees in the state other than a traveling representative who visits the state to solicit from theatre managers or owners contracts for the exhibition

there of films to be supplied by appellee. Appellee owns no property in West Virginia other than the films sent there temporarily for exhibition and afterward returned to it at points without the state.

In the course of its business appellee from time to time makes public announcements of its offering of films. Theatre owners or managers in West Virginia sign written applications in the form of offers for license contracts permitting the exhibition in West Virginia of such films as they desire to show there. The signed applications are transmitted to appellee's New York office, where it accepts or rejects them. When they are accepted, appellee signs a written acceptance attached to the application and returns the executed contract to the exhibitor. The subsequent course of business between appellee and the West Virginia exhibitor conforms to the terms of the contract. It calls for the delivery of the films by shipment from any of appellee's exchanges to the exhibitor in West Virginia, and provides for exhibition of the films for a specified period, for which the exhibitor undertakes to pay a fixed sum or a percentage of the receipts from exhibition, and for the return of the films by the exhibitor after they are shown, by shipping them to another exhibitor or to one of the appellee's exchanges, as appellee may direct.

When the license is upon a percentage basis, the exhibitor undertakes to segregate appellee's percentage of the box office receipts and to hold it "in trust" and pay it over to the appellee daily. But the contract provides that "Any and all payments to be made hereunder shall be payable to the Distributor at the city in which is located the Exchange from which the Exhibitor is served," and all payments due appellee from West Virginia exhibitors are sent by them to appellee at points without the state.

Upon the argument the state conceded that the exhibitors of appellee's films in West Virginia are subject to

and pay the tax imposed on operators of moving picture houses by § 2 (g) and that the tax is measured by the entire gross receipts from exhibiting the films, ascertained without deducting the percentage payable to appellee. The Attorney General of the state disclaimed any contention that appellee was taxable under § 2 (h), see *Pennywitt* v. *Blue,* 73 W. Va. 718; 81 S. E. 399, or under any provisions of the statute other than those of 2 (i) laying a gross receipts tax on every person engaging within the state in the business of collecting incomes from property.

The Supreme Court of West Virginia appears not to have construed this section, and we are without the benefit of any legislative history of the statute indicating that it has any purpose or meaning other than that suggested by its words. We are not here concerned with the question whether a state, by a statute appropriately framed, may lay a tax on income derived from sources within it, or whether the solicitation of the contracts may be taxed. No such taxation is attempted by § 2 (i). The taxing provisions of § 2 are restricted in their application to various enumerated classes of activities within the state, one of which, specified in § 2 (i), is that of engaging there in the business of collecting incomes. The conduct of such a business or activity by appellee requires its presence there, or that of its agent, and the collection of income within the state by the one or the other. As it is stipulated and found that appellee carries on no business within the state, except such as is involved in solicitation of the contracts, and has no collection agent there, and as the exhibitors there are bound to and do pay all sums due under their contracts to appellee at points outside the state, we can find no basis for saying that it is engaged in collecting income within the state, either as a business or otherwise.

The contract requirement that the exhibitor is to set apart the appellee's percentage of the gross receipts "in trust" is a familiar device for securing payment to the appellee in the event of the exhibitor's financial embarrassment. But it does not make the exhibitor appellee's agent, nor does it dispense in law, more than it has in fact, with the performance of the former's obligation to make all payments to appellee without the state. The emphasis placed by § 2 and its various subsections on the carrying on of business or other specified activities within the state as the condition of laying the tax, and the fact that the exhibitors' receipts are taxed in their hands under § 2 (g), lead to the conclusion that there was no legislative purpose in cases like the present to tax gross receipts apart from the business or activity of collecting them, carried on within the state. We cannot say that the court below was wrong in that conclusion.

*Affirmed.*