In the Matter of the Tax Appeal of HEFTEL BROADCAST-ING HONOLULU, INC.. Taxpayer.

NO. 5790

AUGUST 3, 1976

RICHARDSON, C.J., KOBAYASHI, OGATA,
MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY KOBAYASHI, J.

This appeal concerns the propriety of privilege-tax assessments by the Director of Taxation, State of Hawaii (Director), against foreign corporations that had license agreements, involving telecast rights of films, with Heftel Broadcasting Honolulu, Inc. (KGMB-TV). The assessments were for rental incomes received from KGMB-TV during a period when the foreign corporations were not physically present or engaged in any activity in the State of Hawaii (State) other than owning and renting film prints and their telecast rights, and the shipping of the films to KGMB-TV.

Heftel Broadcasting Honolulu, Inc., owner-operator of KGMB-TV, having accepted under the license agreement, responsibility for Hawaii taxes, paid under protest the taxes assessed against one film lessor, CBS Enterprise, Inc. (CBS), and brought this action to the tax appeal court as a test case for all of the film lessors concerned. (KGMB-TV and CBS are also designated as appellants herein.) The crucial issues raised by this case involve (1) a question of statutory-intent, that is, whether HRS § 237-13(10) (Supp. 1975)[1] extends to out-of-state persons who have engaged in no more instate activities than the licensors were involved herein; (2) a Due Process[2] question of whether there is a sufficient nexus between Hawaii and the transactions involved to warrant jurisdiction of the State to impose the privilege tax; and (3) a

---

[1] HRS § 237-13(10) reads:

(10) Tax on other business. Upon every person engaging or continuing within the State in any business, trade, activity, occupation, or calling not included in the preceding paragraphs or any other provisions of this chapter, there is likewise hereby levied and shall be assessed and collected, a tax equal to four per cent of the gross income thereof. In addition, the rate prescribed by this paragraph shall apply to a business taxable under one or more of the preceding paragraphs or other provisions of this chapter, as to any gross income thereof not taxed thereunder as gross income or gross proceeds of sales or by taxing an equivalent value of products, unless specifically exempted.

[2] U.S. Const. amend. XIV.

Commerce Clause[3] question of whether the tax imposes an unconstitutional burden on interstate commerce.

The tax appeal court accepted the parties' stipulation of facts as its findings and concluded that the tax assessments were valid and proper. From this conclusion, KGMB-TV appealed. We affirm.

## FACTS

During the period in question, 1970 through 1973, KGMB-TV, as licensee under "license agreements" (agreements) with 42 foreign corporations (licensors), had the rights to telecast feature films and syndicated television film series, provided by the licensors, in the State. The agreements were negotiated by licensors from mainland offices by mail, wire, telephone or by personal contact with mainland representatives of KGMB-TV. All agreements were consummated on the mainland. From 1970 through 1973, none of the licensors had an office or place of business in Hawaii; nor did any of them have any agent or employee residing in the State. Furthermore, none of these licensors requested authorization to transact business in Hawaii under HRS chapter 418, Foreign Corporations, or were licensed under the Hawaii general excise tax law, HRS chapter 237.

CBS, one of the 42 licensors and the licensor in this test case, entered into a typical agreement with KGMB-TV on February 19, 1970. The agreement granted to KGMB-TV permission to telecast 104 programs of the *Wild Wild West* series from October 1, 1970 to September 30, 1973. In return, KGMB-TV was to pay CBS a net license fee of $62,400.00 in 24 monthly installments of $2,600.00 commencing on November 1, 1970, but subject to reduction in the event of "Eliminated Broadcasts", as defined under the "Terms and Conditions" of the agreement.

Parts of the "Terms and Conditions" of the CBS-KGMB-TV agreement that we believe are significant are as follows:

---

[3] U.S. Const. art. I, sec. 8, cl. 3.

. . . .

3. Delivery and Return of Prints. (a) CBS will deliver to Licensee, at the address specified . . . collect . . . . Delivery of the prints by CBS to Licensee, Licensee's agent or a common carrier shall be deemed to be delivery by CBS to Licensee hereunder. If deliveries are made to a common carrier, they shall be made in time normally sufficient for prints to reach their destination at least two (2) business days prior to date of the scheduled broadcast thereof. In the event that any print has not reached its destination at least two (2) business days prior to the date of the scheduled broadcast thereof, Licensee shall immediately notify CBS by telegram. If Licensee so notifies CBS and CBS shall not deliver to Licensee, prepaid, a replacement print of the same program, or . . . a program acceptable to Licensee . . . in time for the scheduled broadcast, such broadcast shall be deemed an "Eliminated Broadcast".

(b) Licensee will examine each print immediately upon receipt thereof and will immediately notify CBS by telegram if such print is defective for broadcasting . . . . If Licensee so notifies CBS and CBS shall not deliver to Licensee, prepaid, a replacement print . . . acceptable to Licensee . . ., in time for the scheduled broadcast, such broadcast shall be deemed an "Eliminated Broadcast" . . . .

(c) Licensee will return each print, prepaid, substantially in the same condition as received by Licensee . . . to CBS . . . within 24 hours . . . after the broadcast . . . . Delivery of the prints by Licensee to CBS, CBS' agent or specified addressee, or a common carrier shall be deemed to be delivery by Licensee to CBS hereunder.

. . . .

6. Loss or Damage. Licensee shall immediately report to CBS any loss, theft, destruction or damage to any print or part thereof occurring between the time of receipt thereof by Licensee and the delivery thereof by Licensee as provided in subparagraph (c) of paragraph 3 hereof, and Licensee shall pay CBS a sum equal to the cost of

making a new print thereof. . . .

. . . .

14. ELIMINATED BROADCASTS. For each Eliminated Broadcast, the Net License Fee shall be reduced by an amount equal to the Net License Fee divided by the total number of broadcasts authorized hereunder.

. . . .

Noteworthy is the failure of the record to indicate whether or not the licensors were in fact subject to, or were being assessed for the rental income from KGMB-TV, taxes of the same nature as the privilege tax in question, by other taxing jurisdictions.

### OPINION

### *I. HRS § 237-13(10)*

The initial issue is whether CBS, in performing the license agreement with KGMB-TV from 1970 to 1973, was ". . . engaging or continuing within the State in any business, trade, [or] activity . . ." within the meaning of HRS § 237-13(10).

Appellant's principal contention on this issue is that, ". . . the agreed facts demonstrate that *all* activities [including transfer of possession of the films] of the licensors, occurred on the Mainland" and so the mere physical presence of CBS' films in the State and its rental are insufficient "instate business activity" to justify application of HRS § 237-13(10).

The Director, on the other hand, contends that the presence and rental of CBS' films in Hawaii constituted "economic activity" sufficient to meet the "instate business activity" requirement of the statute. Under the circumstances of the case at hand, we agree with the Director.

In reaching our conclusion, we looked to HRS § 237-2

which specifies what constitutes "Business" for purposes of chapter 237.[4] That section provides:

> §237-2 *"Business", "engaging" in business, defined.* "Business" as used in this chapter, includes all activities (personal, professional, or corporate), engaged in or caused to be engaged in with the object of gain or economic benefit either direct or indirect, but does not include casual sales.
>
> The term "engaging" as used in this chapter with reference to engaging or continuing in business also includes the exercise of corporate or franchise powers.

Of significance in this case, as we see it, is that in essence what CBS leased to KGMB-TV were not only the film prints but, more importantly, also the intangible telecast rights[5] of the films. These telecast rights were wholly consummable and *only consummable in Hawaii* within specific time limits.[6] And both CBS and KGMB-TV exercised continuing dominion over such telecast rights. So even though the agreement was consummated on the mainland, it was done so with the intent that performance would occur almost entirely in Hawaii.

---

[4] Appellant's reference to HRS § 418-6 and qualification cases for determining what constitutes "doing business" instate is inappropriate. It is well-established that significantly more business activity is required for qualification purposes than for taxing jurisdiction. *Three Kinds of Doing Business*, 23 Corp. Journal 163 (1961).

Similarly, appellant's use of long-arm statute cases is without basis because those cases deal with a different test, *i.e.* whether subjecting the foreign corporation to suit would offend traditional notions of fair play and substantial justice. This test does not turn on business activities of the corporation in the state so much as considerations affecting the convenience of the parties, the location of witnesses and the relative expense of producing them at the forum attempting jurisdiction. *Three Kinds of Doing Business, supra.*

[5] Being intangible, the telecast rights are not subject to Hawaii use tax laws which are only applicable to tangible property.

[6] Under the terms of the license agreement with CBS, KGMB-TV could telecast each film only four times within a period of around two weeks. Telecasts could only take place within the State.

Furthermore, unlike a sale of goods that takes place on the mainland with the goods being transported here, the license arrangement *continued into this State* wherein it was a source of income to the licensor. This continuing leasing of the telecast rights performable only in Hawaii for a rental charge, we believe, is the type of activity contemplated in the definition of "Business" given in HRS § 237-2. Thus, we are of the opinion that regardless of the fact that all activities in the consummation of the agreement between the parties herein occurred on the mainland, CBS was engaged in local "business" within the meaning of chapter 237. *See Boswell* v. *Paramount Television Sales, Inc.*, 291 Ala. 490, 282 So.2d 892 (1973).

Furthermore, though subparagraph 3(a) of the "Terms and Conditions" (Terms) of the agreement provides that delivery of the prints to a common carrier [on the mainland] shall be deemed delivery by CBS to KGMB-TV, an overview of the remainder of the agreement, especially paragraphs 3, 6 and 14 of the Terms, convinces this court that actual transfer of possession of the films occurred in Hawaii. Our view is based principally upon the fact that the risk of nonreceipt and of nonperformance remained on CBS until KGMB-TV physically obtained possession of the films in Hawaii, in time for the scheduled broadcasts, and in acceptable condition. *See* Terms subparagraphs 3(a) and 3(b), *supra*. And contrary to appellant's implication, the risk of loss of, or damage to the film prints was on CBS except when KGMB-TV had actual possession of the films. *See* Terms paragraph 6, *supra*. Additionally, delivery of the prints by KGMB-TV to a common carrier [in Hawaii] is deemed to be delivery to CBS. *See* Terms subparagraph 3(c), *supra*.

II. *Due Process*

Somewhat overlapping, the first issue is the Due Process question, *i.e.* whether extending HRS § 237-13(10) to CBS violates due process because of a lack of "nexus" between the State and the transactions involved.

Appellant contends that "[t]he passive ownership of films, only temporarily here on the order of licensees for use

by licensees at their risk and cost, in pursuance of their contract right to show the films, is not reasonably classifiable as doing business in Hawaii by the licensors of the films.''

The Director argues that in this case, the presence of CBS' film in the State for rental purposes more than meets the minimum requirements of nexus for privilege tax purposes.

The basic test of State jurisdiction to tax is whether the tax bears some reasonable fiscal relation to the protection, opportunities, and benefits given by the State, *i.e.* whether the State has provided something for which in fairness it can ask such a return. *E.g. Wisconsin* v. *J. C. Penney Co.*, 311 U.S. 435, 444 (1940). Similarly, it has been held that intangibles, such as the telecast rights involved here, can be taxed by states other than the domicile of the owner where there have been sufficient contacts with the jurisdiction to make it fair and reasonable that the tax be paid. *See Fidelity and Columbia Trust Co.* v. *Louisville*, 245 U.S. 54 (1917); *see also Curry* v. *McCanless*, 307 U.S. 357, 367 (1939).

We believe that there was sufficient business activity by CBS in this State in its licensing agreement with KGMB-TV to justify the privilege tax. Contrary to appellant's contention, physical presence of CBS' films was not the only contact with Hawaii. As expressed in section I, we view the licensing arrangement as a business activity that may have originated on the mainland but in fact continued into, and indeed only had value in this State; the telecast rights were only exercisable and in fact were only exercised in Hawaii. Also, as stated earlier, the actual transfer of possession of the films occurred in Hawaii. And as expressed in *Wisconsin* v. *J. C. Penney Co., supra,*

> A state is free to pursue its own fiscal policies, unembarrassed by the Constitution, if by the practical operation of the tax the state has exerted its power in relation to opportunities which it has given, to protection which it has afforded, to benefits which it has conferred by the fact of being an orderly, civilized society. 311 U.S. at 444.

Accordingly, we conclude that CBS had extended its ac-

tivities, with respect to the film prints and the telecast rights of those film prints, so as to avail itself of the protection, opportunities and benefits afforded by this State. *See Stone* v. *Stapling Machines Co.*, 220 Miss. 470, 71 So.2d 205 (1954), *appeal dismissed*, 348 U.S. 802 (1954), *reh. den.*, 348 U.S. 884 (1954). We therefore deem the tax assessment to be fair and reasonable and not violative of due process.

III. *Commerce Clause*

Generally, the Commerce Clause of the United States Constitution prohibits state taxes that discriminate against, or impose multiple burdens on, interstate commerce. *Western Live Stock* v. *Bureau of Revenue*, 303 U.S. 250 (1938).

Appellant contends that the "business activities" that licensors were engaged in were exclusively interstate commerce, and so, the State privilege tax unconstitutionally taxes the privilege of engaging in interstate commerce. Appellant further contends that the opportunity of other states to exact taxes of a similar nature to HRS § 237-13(10) from the licensors creates a multiple tax burden problem.

The Director, on the other hand, contends that the tax appeal court was correct in finding that:

> The transferring of possession of the films to KGMB and rental thereof for use by KGMB is the taxable activity which wholly occurs in Hawaii after completion of their interstate journey and before the return of the films in interstate commerce. The tax is a valid nondiscriminating tax and is imposed upon all persons who rent or lease tangible personal property in the State whether resident or nonresident.[7]

Although our reasoning is not on all fours with the tax appeal court, we do agree that there was a taxable activity and that it occurred wholly in this State. The income (*i.e.* net license fee) was based solely upon the leased rights which were exercisable only in Hawaii (see Terms, paragraph 14, *supra*); no part of CBS' income was derived from the interstate aspect of its dealings.

---

[7] We believe James v. United Artists Corp., 305 U.S. 410 (1939), is not apposite.

It should be noted that we have considered the line of authority cited by appellant that considers the interstate distribution of films under lease or license agreements as entirely interstate transactions immune from state privilege tax assessments. *Gross Income Tax Division* v. *Warner Bros. Pictures Distributing Corp.*, 233 Ind. 345, 118 N.E.2d 117 (1954); *Paramount Pictures Distributing Co.* v. *Henneford*, 184 Wash. 376, 51 P.2d 385 (1935); *State* v. *Paramount Publix Corp.*, 178 La. 818, 152 So. 534 (1934), *United Artists Corp.* v. *James*, 23 F.Supp. 353, (D.C. W.Va. 1938), *aff'd on other grounds*, 305 U.S. 410 (1939). We believe that appellant's reliance upon this line of authority is misplaced. The above cited cases were based upon the conclusion of the U.S. Supreme Court in *Binderup v. Pathe Exchange*, 263 U.S. 291 (1923), that an interstate business involving leasing and delivering of films was interstate commerce. *Binderup* was a Sherman Anti-trust Act case, however, and a careful reading of the case indicates that the Court accepted the argument of plaintiff in error that in trying to determine the interstate nature of an activity "[d]ecisions with regard to state taxation are inapplicable to the determination of questions arising under the Sherman Act." 263 U.S. at 293. The Court held that "[t]he cases cited by defendants in error, upholding state taxation as not constituting an interference with interstate commerce, are of little value to the inquiry here. It does not follow that because a thing is subject to state taxation it is also immune from federal regulation under the Commerce Clause." [Citations omitted.] 263 U.S. at 311. The clear inference of this holding is that the interstate-intrastate tests are not interchangeable between the two areas. *See also Stafford* v. *Wallace*, 258 U.S. 495, 525-27 (1922); *Addyston Pipe & Steel Co.*, v. *United States*, 175 U.S. 211, 245-46 (1899); *McCaw & Keating* v. *Tax Commissioner Fase*, 40 Haw. 121, 171 (1953); *aff'd*, 216 F.2d 700, *cert. den.*, 348 U.S. 927 (1955). For that reason we gave little weight to that line of authority. Furthermore, *James* v. *United Artists Corp.*, 305 U.S. 410 (1939), is not apposite. That case dealt solely with the nonconstitutional question of whether the foreign corpo-

ration had engaged within West Virginia ". . . in the *business of collecting incomes* from the use of real or personal property . . ." (emphasis added) within the meaning of a West Virginia statute. No attempt was made by the Court to deal with the Commerce Clause questions that we are dealing with here. The Court made this explicit when it stated:

> We are not here concerned with the question whether a state, by a statute appropriately framed, may lay a tax on income derived from sources within it . . . . 305 U.S. at 414.

Additionally we hold that the tax is nondiscriminatory in that it is imposed upon all persons who would lease such telecast rights in this State, whether that lessor was a resident or a nonresident. We therefore hold that the tax does not unconstitutionally tax the privilege of engaging in interstate commerce.

As for the multiple tax burden problem, the burden of proof was upon appellant to establish multiple taxation. *General Motors Corp.* v. *Washington*, 377 U.S. 436 (1964). As mentioned earlier, the record fails to indicate whether or not the licensors were in fact subject to, or were being assessed for the rental income from KGMB-TV, taxes of the same nature as the tax in question, by other states. Accordingly, we refrain from passing on the question of "multiple taxation".

Affirmed.

*George G. Grubb (Carlsmith, Carlsmith, Wichman & Case* of counsel) for taxpayer-appellant.

*Alana W. Lau,* Deputy Attorney General *(Ronald Y. Amemiya,* Attorney General, with her on the brief) for Director of Taxation, appellee.

CONCURRING OPINION OF KIDWELL, J.

I concur in the judgment on this appeal, although I do not agree with everything that is said in the majority opinion. The tax imposed by HRS § 237-13(10) falls only upon persons who engage or continue within the State in a "business, trade, activity, occupation or calling." The consummation of a ren-

tal or licensing transaction, by the delivery into the possession of the renter or licensee of the subject matter of the transaction, if such delivery takes place within the State, is sufficient activity to render taxable the income from the transaction. *Boswell* v. *Paramount Television Sales, Inc.*, 291 Ala. 490, 282 So.2d 892 (Ala. 1973), correctly so holds. As the majority opinion points out, a privilege tax wholly on such an activity within the State raises no significant due process or commerce clause problems. Despite some evasive language, the typical agreement before us in this case imposes on the licensor the obligation and risk of placing the films in the hands of the licensee in Hawaii. I view this as sufficient to sustain the tax and consider it unnecessary to take up the question whether the mere owning and renting of film prints and their telecast rights, without the activity in the State of such delivery, would fall within HRS § 237-13(10). *Cf. James* v. *United Artists Corp.*, 305 U.S. 410 (1939).