393 So.2d 1244 (1981)
COLLECTOR OF REVENUE
v.
WELLS FARGO LEASING CORPORATION.
COLLECTOR OF REVENUE
v.
WELLS FARGO TRANSPORT LEASING CORPORATION.
No. 67762.
Supreme Court of Louisiana.
January 26, 1981.
*1245 Art B. Haack, W. Steven Mannear, Baton Rouge, for plaintiff-applicant.
Stephen A. Cooper, Martha L. Daetwyler, San Francisco, Cal., Nigel E. Rafferty, Edward T. Meyer, Monroe & Lemann, New Orleans, for defendant-respondent.
DENNIS, Justice.
The Collector of Revenue assessed deficiencies against both related corporate defendants, Wells Fargo Leasing Corporation and Wells Fargo Transport Leasing Corporation, for failure to pay the Louisiana Occupational License Tax as imposed by La. R.S. 47:341 and 47:386. The Wells Fargo corporations have successfully resisted paying this tax; the Board of Tax Appeals, district court and court of appeal all rendered judgments in the proposed taxpayers' favor. Because we believe that the taxpayers' local activities fairly constitute the "pursuing of business in the state" and the presence of a business office in the state is not a prerequisite to imposition of the occupational license tax, we reverse.
The Collector of Revenue assessed deficiencies totaling just over $550 owed by both Wells Fargo corporations for delinquent occupational license taxes. The corporations sought a redetermination of these assessments before the Board of Tax Appeals. In their petition for redetermination, the proposed taxpayers alleged that they were not subject to the tax because they maintained no office in Louisiana and all transactions were handled and closed by an office outside the state relying on a 1950 opinion of the Louisiana Attorney General. No agent of the Wells Fargo Corporation actually appeared before the Board. The attorney for the Department of Revenue did appear and conceded that the Wells Fargo companies had no office in this state, nor was he aware that either company had any agents or employees residing in the state. The Collector's attorney argued, however, that a discrete place of business in the state is not required by the statutes and that the Wells Fargo corporations had sufficient contacts with the state to justify a finding that they were pursuing business in the state, specifically, the business of leasing movable property within the contemplation of La.R.S. 47:341 and 47:386. According to the Collector's attorney, company helicopters were used by a lessee in the state, Wells Fargo probably had personnel come into the state periodically to inspect their equipment, the companies were authorized to do business in Louisiana and had a registered agent to accept service of process, the companies collected use tax on Louisiana rental income, and were afforded all the protections and privileges accorded Louisiana domiciliariespolice and fire protection, access to Louisiana courts, etc.
The Board of Tax Appeal rendered written judgment in favor of the Wells Fargo corporations on January 8, 1976. The board offered no written findings of fact or conclusions of law on which it based its decision. Section 1410 of Title 47 requires the board to make written findings of fact. The Board of Tax Appeals, as an agency of the executive branch, La.R.S. 47:1401, is subject to the provisions of the Louisiana Administrative Procedures Act, La.R.S. 49:951, et seq. See particularly La.R.S. 49:951(2); 49:954.1(A). Section 958 of the act requires a final decision in an adjudication proceeding to include findings of fact and conclusions of law in writing or stated in the record. Such requirements are essential for proper judicial review by the district court and higher appellate courts since this record is the basis for any action on review, and any decision must be rendered upon such record. La.R.S. 47:1434.
The record in this case consists only of responses by the Collector's attorney to *1246 questions posed by board members. The proposed taxpayers chose to rely on their pleadingsthat they were not subject to the tax since they had no business office in the state and did not close any business transactions in the state. Apparently, the board accepted these allegations as true and considered them a sufficient basis to grant both Wells Fargo corporations the affirmative relief requested.
The district court found no manifest error in the board's decision. The court of appeal, in interpreting principally La.R.S. 47:345, concluded that the occupational license tax could not be levied upon a taxpayer that does not have a place of business in Louisiana. Since the absence of a place of business was satisfactorily established by the record, it also affirmed the ruling for the Wells Fargo corporations.
The taxpayers have never contended that imposition of this tax on them would violate the commerce or due process clauses of the federal constitution. The question then is one of statutory construction: whether the taxpayers have sufficiently demonstrated that they are not subject to the occupational license tax. Even reading the pleadings and record in a light most favorable to the taxpayers, we find no warrant in the record or justification in the law for setting aside the assessments against them. We disagree with the taxpayers' contention, which the court of appeal accepted, that the tax cannot be imposed on one who conducts business but has no place of business in the state.
Section 341 of Title 47 imposes "an annual license tax upon each person pursuing any trade, profession, vocation, calling or business in this state subject to license under Section 8 of Article X of the Constitution of 1921 ...." The Wells Fargo corporations were assessed as "person[s] carrying on the business of leasing, renting, or licensing the use of movable property or property rights" within the meaning of La. R.S. 47:386. The language of Section 341each person pursuing any business in the stateis broad in scope. Although taxing statutes must be construed strictly against the taxing authority, Treat v. White, 181 U.S. 264, 267, 21 S.Ct. 611, 613, 45 L.Ed. 853, 854 (1901); Gertrude Gardner Inc. v. McNamara, 359 So.2d 644 (La.App. 1st Cir. 1978), there is no exception from the occupational license tax for persons who carry on business in the state without maintaining a recognized business office. The taxpayer and the court of appeal attached significance to La.R.S. 47:345 which requires "a separate license for each class of business at each place of business." This statute, it was argued, exempts a person who conducts a business without having a place of business in the state. Of course, most businesses will ordinarily have a recognized office in the state, but the statute does not provide that an office is essential to imposition of the tax. Section 345 merely makes it abundantly clear that a separate license is required for each class of business and allows the state to exact additional revenue from taxpayers who have more than one business location.
That a fixed place of business is not required under La.R.S. 47:341 is supported by express coverage under the occupational license tax of certain transient vendors, the applicable rate of tax being set in La.R.S. 47:381 and 47:385 in language that does not indicate that imposition on these taxpayers is in any way exceptional.
Wells Fargo has not raised any constitutional attack on our statute as applied, but in part relies on early interpretations of our statute that were affected by federal constitutional considerations. The permissible bounds of state taxation of interstate commerce were narrowly defined by early jurisprudence interpreting the federal commerce clause. See, e. g., Spector Motor Service v. O'Connor, 340 U.S. 602, 71 S.Ct. 508, 95 L.Ed. 573 (1951); overruled Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326; Nippert v. Richmond, 327 U.S. 416, 66 S.Ct. 586, 90 L.Ed. 760 (1946). In order to avoid constitutional problems, courts were likely to find persons engaged solely in in-state solicitation of orders accepted out-of-state as lacking sufficient connection with the state to sustain *1247 the assessment. These assessments were said to fall directly on interstate commerce and thus violate the commerce clause. Nippert v. Richmond, supra; Graham Mfg. Co. v. Rolland, 191 La. 757, 186 So. 93 (1939); State v. Paramount Publix Corp., 178 La. 818, 152 So. 534 (1933). Recent commerce clause cases have repudiated the earlier stricter interpretations upon which our older cases relied. The United States Supreme Court has indicated that a state may constitutionally levy nondiscriminatory, properly apportioned taxes upon foreign corporations doing an exclusively interstate business when the tax is related to a corporation's local activities and the state has provided benefits and protection for these activities for which it is justified in asking a fair and reasonable return.[1] See, e. g., Mobil Oil Corp. v. Comm'r of Taxes of Vermont, 445 U.S 425, 100 S.Ct. 1223, 63 L.Ed.2d 510 (1980); Dept. of Revenue of State of Washington Stevedoring Cos., 435 U.S. 734, 98 S.Ct. 1388, 55 L.Ed.2d 682 (1978); Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977); Colonial Pipeline Co. v. Traigle, 421 U.S. 100, 95 S.Ct. 1538, 44 L.Ed.2d 1 (1975).
The taxpayers have relied on their lack of a business office in Louisiana to escape the occupational license tax. Since we have determined that such office is not necessary for imposition of the tax, there is nothing in the record to support a judgment in Wells Fargo's favor. However, we also believe that the record, such as it is, demonstrates the existence of sufficient local activities to make such tax just.
The Wells Fargo corporations have qualified to do business in Louisiana, La.R.S. 12:301, and are on an equal footing with all domestic business concerns.[2] It is also undisputed that the Wells Fargo corporations own property located in this state from which they derive substantial revenue by leasing to Louisiana lessees. As distinguished scholars in the field of state taxation have noted: "The ownership of property in the State (which is sometimes explicitly made a basis for taxation by statute) actively used in the trade or business normally gives rise to the tax." J. and W. Hellerstein, State & Local Taxation 307 (4th ed. 1978). The Supreme Court of Hawaii, recently interpreting its similar privilege tax statute,[3] found the taxpayer subject to the tax though it had no place of business within the state, no agent or employee residing in the state and all lease agreements were consummated outside the state. In Matter of Tax Appeal of Heftel Broadcasting Honolulu, Inc., 554 P.2d 242, 245 (Haw.1976). The Court stated that:
"unlike a sale of goods that takes place on the mainland with the goods being transported here, the license arrangement continued into this State wherein it was a source of income to the licensor. This continuing leasing of the telecast rights performable only in Hawaii for a rental charge, we believe, is the type of activity contemplated in the definition of `Business' given in HRS § 237-2." 554 P.2d at 246-47.
See also, J. C. Penney Co., Inc. v. Hardesty, 264 S.E.2d 604 (W.Va.1979).
*1248 Taken as a whole, we believe the extent and continuity of local activities, as opposed to merely incidental, isolated contact with the state, evidence a purposeful pursuit of business within the state. Accordingly, the assessments as originally calculated by the Department of Revenue are reinstated.
REVERSED.
NOTES
[1] A sufficient nexus between the taxpayer and the state exists:

"whenever a company takes advantage of the economic milieu within the state to further its corporate goals. The state will be entitled to tax the company because the benefits it provides are a substantial and necessary economic factor in the success of its operations. Such benefits involve the maintenance of services and protection essential to the production or marketing of goods, the ownership of property or the employment of personnel."
Note, State Taxation of Interstate Commerce: An Analysis of Current Standards Promulgated by the United States Supreme CourtDepartment of Revenue v. Association of Washington Stevedoring Cos., 28 DePaul L.Rev. 205, 216 (1978).
[2] Generally more business activity is required for qualification purposes than for taxing jurisdiction. See La.R.S. 12:302 (Supp.1972). Three Kinds of Doing Business, 23 Corp.J. 163 (1961). The context of the inquiry into "doing business" must thus be kept in mind.
[3] Haw.Rev.Stat. § 237-13(10) imposes a tax "upon every person engaging or continuing within the State in any business, trade, activity, occupation, or calling ...."