STATE of Alaska, DEPARTMENT OF REVENUE, Appellant/Cross-Appellee,

v.

NORTHERN TV, INC., Appellee/Cross-Appellant.

Nos. 7037, 7064.

Supreme Court of Alaska.

Sept. 9, 1983.

Richard D. Monkman, Asst. Atty. Gen., Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellant/cross-appellee.

Kermit E. Barker, Jr., Lane, Powell, Barker & Hicks, Anchorage, for appellee/cross-appellant.

Before BURKE, C.J., RABINOWITZ, MATTHEWS and COMPTON, JJ., and DIMOND, Senior Justice.*

## OPINION

DIMOND, Senior Justice.

This case involves taxes assessed under AS 43.70.030, the Alaska Business License Act,[1] against Northern TV on revenue it

---

\* Dimond, Senior Justice, sitting by assignment made pursuant to article IV, section 11, of the Constitution of Alaska.

1. The relevant section of this statute has since been repealed by ch. 144, § 5, SLA 1978.

collected during the years 1971–78 from broadcasting national network programs and national spot advertisements in Alaska.[2] The state appeals a superior court decision holding that it was estopped from assessing Northern TV for certain deficiencies by virtue of a prior administrative decision.

Previously, on September 25, 1967, after a hearing held at the request of seven broadcasting companies including Northern TV, the Department of Revenue's hearing officer issued a formal decision, *In re Midnight Sun Broadcasting Co.* The opinion stated in part:

> The Supreme Court cases have indicated that receipts from interstate commerce itself may be taxed if there is a reasonable apportionment of receipts based on the relative proportion of activities carried on within the state. However, as to the taxing of these receipts derived from national product spot advertising and network broadcasting, the Department of Revenue takes the position that the case law is not yet adequately developed to indicate how these interstate receipts may be fairly apportioned to reflect the activities carried on wholly within the state. Thus, the Department of Revenue does not intend to impose the gross receipts tax against the petitioners for those particular receipts at the present time.
>
> . . . .
>
> Based on the above conclusions and discussion, we determine that the petitioners shall report in their returns all gross receipts but may, until such time as the status [of the] law concerning taxing of interstate commerce becomes clearer, show a deduction for purposes of computing the tax for any amounts received from interstate-radio and television network sales and interstate national product sales.

In a 1978 audit of Northern TV's 1971–1977 tax returns, the Department disallowed the deductions for network broadcasts and national spot advertising. At Northern TV's request, an informal conference was held regarding the tax assessments for 1971–1977 and additional proposed assessments for tax year 1978. The Department then notified Northern TV on January 30, 1981, that the assessments had been determined to be correct, and demanded payment of a total of $53,270.50 in back taxes, penalties and interest for the tax years 1971–1978. This decision was appealed at a formal hearing before a hearing officer. A final administrative decision upholding the assessment was issued on June 29, 1981.

Northern TV then appealed to the superior court, continuing to press its theory that the Department was estopped from assessing the challenged back taxes because of its previous pronouncement in *Midnight Sun.* The superior court held that although the Department could legally tax the gross receipts received from network broadcasts and national spot advertising, it was estopped from doing so. The Department has appealed the estoppel issue.

The elements of equitable estoppel were delineated in *Jamison v. Consolidated Utilities, Inc.,* 576 P.2d 97, 102 (Alaska 1978):

> The general elements required for the application of the doctrine of equitable estoppel are the assertion of a position by conduct or word, reasonable reliance thereon by another party, and resulting prejudice. [Footnote omitted.]

Applying the doctrine here, it is apparent that at least one of the three necessary elements is missing. In 1967, the Department of Revenue took a "position" when the hearing officer stated that Northern TV could show a deduction for certain "interstate" receipts "until such time as the status [of the] law concerning taxing of interstate commerce becomes clearer." The Department stated that it did not intend to impose a gross receipts tax "for those particular receipts at the present time," al-

---

**2.** "National spot advertisements" are commercials produced by national advertising firms or their clients and broadcast in Alaska by Northern TV. For broadcasting these commercials, Northern TV receives compensation. "Network programs" are programs produced by the media networks, shipped to Alaska, and broadcast by Northern TV. Northern TV receives compensation for broadcasting these programs in Alaska.

though Northern TV was required to report in its tax returns all gross receipts.

However, Northern TV has failed to show that its reliance on the Department's position was reasonable. The *Midnight Sun* decision did not state objectively, nor did it imply, that the Department was permanently exempting the disputed revenues from taxation under the Alaska Business License Act. Indeed, the decision indicates a distinct possibility that those revenues would be taxed. The Department simply took "the position that the case [was] not *yet* adequately developed to indicate how these interstate receipts may be fairly apportioned to reflect the activities carried on wholly within the state" and, therefore, decided not "to impose the gross receipts tax against the petitioners for those particular receipts at *the present time.*" (Emphasis added.) Northern TV's reliance that it would *never* be taxed on "those particular receipts" was unreasonable.

Another portion of the *Midnight Sun* decision further indicates that the Department's decision was provisional and that Northern TV's reliance was unreasonable. The 1967 decision said:

> Based on the above conclusions and discussion, we determine that the petitioners *shall report in their returns all gross receipts* but may, until such time as the status [of the] law concerning taxing of interstate commerce becomes clearer, *show a deduction for purposes of computing the tax for any amounts received from interstate radio and television network sales and interstate national product sales.* [Emphasis added.]

The italicized portions above are evidence that the Department's position was that it might in the future assess the disputed taxes. If the Department had no intention of collecting taxes on "interstate" revenues, i.e., the revenues were not taxable receipts within the constitutional meaning of the Alaska Business License Act, there would be no reason to account for and deduct them. The accounting of the receipts can reasonably be seen as setting up a mechanism whereby the Department could easily assess taxes in the future if it found it legally permissible to do so.

Since we find that Northern TV's reliance on the Department's 1967 decision was unreasonable, we do not reach the question of whether Northern TV has been prejudiced, i.e., suffered detrimental reliance. Detrimental reliance can only occur, legally speaking, when the party seeking to invoke the doctrine of equitable estoppel has relied reasonably on the representation of the adverse party. When, as here, reliance on a taxing authority's "position" is unreasonable, an inquiry into whether or not such reliance resulted in prejudice is irrelevant.

The trial court held that had it not been for the estoppel, Northern TV's gross receipts taxes would have been taxable under former AS 43.70.030 of the Alaska Business License Act [am. ch. 144, § 5, SLA 1978]. Northern TV challenges this finding, contending that the revenues derived by it from network broadcasting and national spot advertising were not gross receipts within the meaning of the statute.

Northern TV is a "network affiliate" of the Columbia Broadcasting System and the American Broadcasting Company. Under its network affiliation agreement, Northern TV brings network television programming into the State of Alaska either by direct satellite transmission or by video tape shipped to Alaska. The network programming is produced outside the State of Alaska. Northern TV receives compensation for broadcasting these programs from its place of business situated in Alaska.

The Alaska Business License Act defines "gross receipts" as follows:

> "Gross receipts" means receipts from sources in the state . . . received from engaging in or conducting a business. . . . Receipts from sales, wherever made, of goods, wares, and merchandise manufactured or processed or originating in the state are considered a part of gross receipts from sources in the state. . . .

AS 43.70.110(2). One significant aspect of the above-quoted language is that it allowed the Department to tax "[r]eceipts from sales, *wherever made,* of goods, wares, and merchandise manufactured or proc-

essed or originating in the state [as if they constituted] a part of gross receipts from sources in the state." *Id.* (emphasis added). Since the sales of broadcasting time for national spot advertising and network programming were arguably made outside of Alaska because they invoked out-of-state purchasers, the interpretation of this statutory language as it applies to Northern TV's broadcasting activities is important.

Northern TV contends that the phrase "goods, wares, and merchandise" did not encompass television broadcasting, and therefore the receipts from broadcasting are not "gross receipts" within the meaning of the statute. It cites cases from the late nineteenth and early twentieth century which define the phrase as including only "commodities and personal chattels." However, we do not agree with Northern TV's antiquated position that the terms "goods" and "merchandise" do not encompass the broadcasting at issue. In recent years, the term "goods" has been broadly defined and applied by the courts. Both natural gas and electricity, intangible substances, have been recognized as "goods" within the meaning of Alaska's larceny statute. *Selman v. State,* 406 P.2d 181, 183, 187 (Alaska 1965). Publications are "goods" rather than services under the Lanham Trademark Act. *Glenn v. Advertising Publications, Inc.,* 251 F.Supp. 889, 903 (S.D.N.Y.1966). A data processing system that includes intangible software, instruction and maintenance constitutes goods under New York's version of the U.C.C. *Triangle Underwriters, Inc. v. Honeywell, Inc.,* 604 F.2d 737, 742 (2d Cir. 1979).

■ We hold that the sale of "air time"—the broadcasting of programs in Alaska for compensation—constitutes a sale of "goods" within the meaning of the statute, and that the compensation constitutes gross receipts subject to taxation. Furthermore, these receipts satisfied the statutory requirement that in order to be taxable the goods must be "manufactured or processed or originating in the state." Although the programs themselves are not manufactured in Alaska and do not originate here, Northern TV is compensated for broadcasting, i.e., processing network programs and advertisements, within the state. This provides its customers with access to the Alaskan market.

■ Even if we were to determine that the sale of "air time" was not a "good" within the meaning of the statute, Northern TV's revenues would still be taxable. The statute addresses itself to a broader range of transactions than the sale of "goods." The term "gross receipts" encompasses "receipts from sources in the state . . . received from engaging in or conducting a business. . . ." "Business" is defined broadly to include "all activities or acts, personal, professional, or corporate, engaged in or caused to be engaged in, or following or engaging in a trade, profession, or business, *including receipts from advertising services,* rental of personal or real property, construction, processing, or manufacturing. . . ." AS 43.70.110(1) (emphasis added).

■ The question to be decided is whether the "source" of the revenues received by Northern TV is considered to be the out-of-state entities paying for the airing of the broadcasts in Alaska or Northern TV's in-state activity of broadcasting television programs. We believe it is the latter. Taxes assessed under the Alaska Business License Act are a tax on doing business in the state. Applied here, the taxes are imposed upon the privilege of engaging in the business of transmitting television programs, not on the product (programs) themselves.[3] It is Northern TV's control of commercial "air time" and thereby of access to audiences within the state that is the "source" of its revenues from major network distributors. Therefore, Northern TV's business activities within Alaska are taxable as gross receipts from sources in the state.

We agree with the superior court to the extent it held that Northern TV's gross

---

**3.** A Hawaii case lends support to our finding that broadcasting is an in-state activity. *In re Heftel Broadcasting Honolulu, Inc.,* 57 Haw. 175, 554 P.2d 242, 248–49 (1976).

receipts from sales of air time for network program and national spot advertising were taxable. The court also held, however, that the Department of Revenue was estopped from collecting the taxes. With this we disagree.

The judgment is therefore AFFIRMED IN PART and REVERSED IN PART in accordance with the views contained in this opinion.