THE HILO SUGAR CO. *vs.* THE MINISTER OF FINANCE.

SUBMISSION TO THE COURT WITHOUT ACTION.

HEARING, JUNE 27, 1889, BY CONSENT.

JUDD, C.J., McCULLY, PRESTON, BICKERTON and DOLE, JJ.

A vessel laden with sugar cleared for San Francisco from Hilo, Hawaii, on the 30th June, but owing to lack of wind did not sail from the port until 1st July.

Held, that the sugar on board the vessel was properly taxed to the owner in this Kingdom, being within this Kingdom on the 1st July, and in the possession, custody or control of the owners.

SUBMISSION.

"The undersigned, the Hilo Sugar Company, a Hawaiian Corporation, plaintiff, and William L. Green, Minister of Finance, defendant, having agreed with each other and hereby agreeing upon the statement of facts hereunder written, respectfully submit the same for hearing and judgment of your Honors,

whether the said Minister of Finance is liable to return to the said Hilo Sugar Company the moneys here claimed by said Company."

AGREED STATEMENT.

"On the twenty-ninth day of June last, the plaintiff had completed the loading of a cargo of sugar, to wit, (430) four hundred and thirty tons, consigned and invoiced to San Francisco, California, on the vessel called the George C. Perkins, then lying at anchor in the port of Hilo, of the Island of Hawaii, and was notified by the pilot of said port, one L. E. Swain, that said vessel had better get off by the land breeze the next morn-, ing. Said pilot went on board said vessel at eight o'clock on the morning of the next day, June 30th, and at about nine o'clock A.M., on the 30th day of June last, the said vessel obtained her clearance papers from the Custom House at said port for the port of said San Francisco, and the said pilot thereupon took charge of said vessel, hoisted her anchor and endeavored to get away, but failing to do so on account of light breeze, dropped anchor, and remained on board and in charge of said vessel awaiting a favorable breeze to get away, but the wind was so light that he was not able to get out of the harbor of said Hilo until between two and three o'clock in the morning of the following day, being Sunday, the first of July last, when he finally weighed anchor and took said vessel out of said harbor and she thereupon proceeded upon her said voyage to said San Francisco, but that said vessel did not pass beyond three miles of the shore of said Island until some hours later.

"The said vessel while so in charge of said pilot was not re-entered at said Custom House.

"The said sugar valued at ($34,400) thirty-four thousand and four hundred dollars, was assessed for that sum to the plaintiff by A. B. Loebenstein, assessor of taxes of the District of Hilo, and the tax therefor, to wit, the sum of ($344) three hundred and forty-four dollars, was demanded of said Company by Daniel Porter, tax collector for said District, and was paid to him by said Company, in order to avoid proceedings to enforce

payment thereof, and under written protest and claim that said tax was illegally assessed and illegally required, on the ground that said sugar was not in possession of said Company on the first day of July, for purposes of taxation and within the meaning of the law concerning the assessment of property, which said protest is hereto attached, marked Exhibit " A " and made a part thereof. Wherefore the plaintiff claims that said sum of three hundred and forty-four dollars should be returned to it, while the defendant claims that said tax was lawfully assessed as aforesaid, and that its payment was lawfully required and received as aforesaid, and that he is not liable to return the same to the plaintiff.

" The said parties further hereby agree that this is a real controversy between them, and this proceeding is brought in good faith to determine the rights of the parties in the premises."

---

*A. S. Hartwell*, for plaintiff.

### PLAINTIFFS' POINTS.

The question whether the sugar was taxable depends on whether this sugar belonged to the plaintiffs and in the meaning of the law was " within this Kingdom ; " or the plaintiffs " had the possession custody or control of it on the first day of July," within the meaning of the tax law.

The vessel containing the sugar was in port at Hilo, ready for sea June 29th, and was on that day notified by the pilot that she had better get off the next morning. At 9 o'clock on the morning of June 30th, the vessel was cleared for San Francisco, the pilot had her in charge, hoisted her anchor, and tried to get away, but light breezes preventing, he was on that account detained in the harbor until between 2 and 3 o'clock A.M., July 1st, when he finally got off, but did not pass beyond three miles from the shore for some hours later, which would allow the inference that she was more than three miles from land at about 6 or 7 o'clock that morning. The vessel was from the first in the pilot's charge, and did not re-enter at the Custom House.

1. The plaintiffs claim that under the above circumstances they did not on any part of July 1st have "the possession, custody or control" of this sugar, and that without re-entering their vessel at the Hilo Custom House, and obtaining a permit as required by law, they could not have exercised any authority over it. The sugar was on a vessel not in their charge or under their control or in their possession. There is no claim made that the sugar belonged to the plaintiffs.

2. Personal property if belonging to one, but beyond his control and out of his possession and custody, is not, "within this Kingdom on the 1st day of July," in the meaning of the law, if (as in this case) it is here for only a small fraction of a day, and that temporary presence results merely from stress or other condition of weather. If the same property passed through the hands and ownership of different owners on the first day of July, it would be taxable once, and once only. In this case, the sugar was not in the Kingdom at all during any of the business portion of the day, which is a proper reason for applying the rule which takes no notice of fractions of a day.

The property to be taxable should be in the Kingdom not only until about daylight, but on the whole day of July 1st.

3. The goods were *in transitu*, and only for a few hours. In *Carrier vs. Gordon*, 21 Ohio St., 605, property (ship-timber) purchased by a non-resident and remaining in the State but to be removed upon the opening of navigation, was held liable to taxation. But the Court say, "If it (the property) is at the time the tax attaches *in transitu*, either through the State or from a point in the State to a point outside the State, it is not to be regarded as property in the State, within the meaning of the statute, but as property belonging to the place of its destination."

4. *Actus Dei nemini facit injuriam.* Broom's Leg. Maxims, 230.

That light wind or failure of wind is *Actus Dei*, see *Colt vs. McMechen*, 6 Johns. R., 160.

If a witness has set out to leave the jurisdiction by sea but the ship has been beaten back, he is still considered absent. *Ward vs. Wells.* 1 Taunt., 461, cited in note to section 572, 1 Greenlf. Ev.

### OPINION OF THE COURT, BY McCULLY, J.

The division between the 30th of June and the 1st of July was at twelve o'clock midnight. The 30th of June did not extend beyond that hour and the next hour belonged to the next day. The statute nowhere intimates that the time of liability of tax shall be at some business hour on the morning of July 1st, and that the exemptions of June extend to some hour of July 1st. So that sugar in the port of Hilo after the hour of midnight of June 30th was within this Kingdom on the 1st of July. Upon the facts stated the sugar may not have been in fact in the "possession, custody or control" of the plaintiffs. Practically it was in the hands of the captain, to whom it had been delivered for transportation abroad, from the midnight until three hours later when the vessel weighed anchor. But the liability for taxes is not limited to goods in possession. By Section 32 of the tax law at page 123 C. L., return must be made of all property "belonging to" or of which they had "possession, or control" on the 1st day of July. By Section 33, every person "owning any property" must make return of it, describing the character and situation, etc., of the property "belonging to such person" or "of which such person had the possession, custody or control on the first day of July." By Section 36, the oath of the person making his return is to the truth of the schedule of "property in my possession or owned by me." It is clear enough from these citations that property within the Kingdom is to be taxed, and that a holding by another person than the owner will not exempt it. The government need not enquire and ascertain ownership. The property of an absent owner does not escape taxation because it is in the possession of another person. But in the case of the cargo of a ship which had just been put on board, and where the owner was well

enough known, it was unnecessary to look to the captain for the taxes. The protest and the agreed statement very carefully abstain from any declaration as to the ownership of the sugar. They deny the possession, custody and control of it.

But there is no denial of the ownership by the plaintiff, and we think the whole case justifies the assumption that the sugar was the property of and belonged to the plaintiff. If it had been sold and delivered to this vessel for transportation to the purchaser, it was for the plaintiff to so set it forth, and we shall assume that he would have done so if such were the fact.

A question would then have arisen as to who should be held liable for the tax, which does not arise in this case.

It then simply remains that sugar, the property of the plaintiff, was within the Kingdom the first day of July. Why should it not be taxed ?

It is claimed that as being in transit it should be exempt. We are referred to the case of *Carrier vs. Gordon*, 21 Ohio, 605, wherein timber lying within the State had been purchased by a non-resident and was awaiting the opening of navigation to be removed out of the State. The Court say : If the property is, at the time the tax attaches, *in transitu* either through the State or from a point in the State to a point outside the State, it is not to be regarded as property in the State within the meaning of the statute, but as property belonging to the place of its destination ; but the Court held that the timber not having started on its journey could not be exempted on the ground of mere intention of the purchaser to move it—an intention which was subject to change. But if it is correct doctrine that property in transit from a State is to be regarded as property belonging to the place of its destination, then *e converso,* the cargoes of ships which have sailed before the first of July and arriving here after that date will be taxable here. We should have, for instance, the cargo of a ship which sailed from England in June taxable on its arrival in Honolulu in October or November, a proposition not well tenable under our statute.

The Ohio case differs essentially from the one at bar in this, that the sugar was not the property of non-resident owners purchased here for exportation. When such a case arises this precedent might be considered. In *Brewer & Co. vs. Tax Collector*, heard by Chief Justice Judd, the jury being waived, the plaintiffs claimed to be refunded taxes on sugar shipped by them on the steamer Alameda on the 28th of June, and up to and previous to the first of July, the steamer sailing at noon of the first. The Court said : The sugar was within this Kingdom although laden in the hold of an American steamship. The sugar, though its bills of lading were mailed to the consignees in a foreign port, was, for the purposes of taxation, still in possession and control of the shipper. See 6 Hawn., 554.

We prefer to take the simple rule which the easiest interpretation of the statute gives. We have nothing to do with the honest intention of the shipper to get his property out of the way of taxation. If he is able to do so by however narrow margin of time, he has the benefit of his diligence. If his intention is defeated by however narrow an entry upon the time belonging to the first of July, he may be assessable. We are unable to see wherein the Custom House clearance or re-entry affect the question of liability for domestic taxes, as being property within the Kingdom, for they do not change ownership, or for taxation purposes, possession.

*A. S. Hartwell*, for plaintiff.

*C. W. Ashford* (Attorney-General), for defendant.

---

CONCURRING OPINION OF DOLE, J.

The question before the Court is, whether the property in question had a situs within the Kingdom for taxable purposes. It may fairly be implied, as stated by the Opinion of the Court, that it belonged to the plaintiffs.

I should have cheerfully followed the majority of the Court had they seen their way to have decided the case in favor of the plaintiffs, under the authority of *Hoyt vs. The Commissioners of*

*Taxes,* 23 N. Y., 240, and *Carrier vs. Gordon,* 21 Ohio, 608. The conclusion of *Hoyt vs. The Commissioners of Taxes* is, that "chattels which are in transit through the State * * * ought not to be considered as having a situs here, so as to be subject to taxation." *Carrier vs. Grodon* is still stronger and more applicable to the case at bar. It says: "It is true that in order to constitute it 'property in the State,' within the meaning of the law, it must have a situs in the State. If it is at the time the tax attaches *in transitu* either through the State or from a point in the State to a point outside the State, it is not to be regarded as property in the State within the meaning of the statute, but as property belonging to the place of its destination." And again: "The safer and better rule is the one indicated, to consider property actually in transit as belonging to the place of its destination, and property not in transit as property in the place of its situs, without regard to the intention of the owner or his residence in or out of the State."

The laws in New York and Ohio are identical with ours, so far as this point is concerned. "All lands and all personal estate within this state * * * shall be liable to taxation." (1 R. S., N. Y., 387, Sec. 1.) "All property, whether real or personal, in this state * * * shall be subject to taxation." (1 R. S., Ohio, Sec. 2731.) "All personal property within this Kingdom, not subject to specific taxes, shall be subject to an annual tax of one per cent." (Hawn. Laws of 1886, Chap. XXXII.)

It will be seen that the opinion in the case of *Carrier vs. Gordon,* above quoted, exactly fits the case before the Court. The circumstance of the sugar belonging to resident owners does not affect the case under our law or either of the laws above quoted; the property is liable to taxation if it is within the Kingdom on the 1st day of July, regardless of the residence of the owners. This sugar started for its destination (San Francisco) on the 30th day of June, and the vessel upon which it was shipped was compelled by unfavorable winds to anchor again, and to remain at anchor until the morning of the first

day of July. The sugar was actually in transit all that part of July 1st, during which it was within Hawaiian limits, as much so as if the vessel in which it was had not dropped anchor, but had been becalmed within a maritime league from the shore until July 1st.

I feel that these cases lay down a convenient rule, and one entirely within the statute. The case of *Brewer & Co. vs. Tax Collector*, even if it had been decided by the Full Court, would not have controlled the case at bar, the circumstances being different, in that the vessel on which the sugar had been placed had not left her moorings before the first day of July.

At the same time, the construction of the law adopted by the Court is, I think, conformable to the statute; the question between the two views is one rather of policy than of exact law. Feeling, therefore, that the Court was at liberty to adopt the rule laid down in its opinion, I very reluctantly concur therein.