OAHU RAILWAY AND LAND COMPANY *v.* EWA
    PLANTATION COMPANY and KAHUKU PLAN-
    TATION COMPANY.

ORIGINAL.

SUBMITTED NOVEMBER 5, 1903. DECIDED DECEMBER 10, 1903..

GALBRAITH AND PERRY, JJ., AND CIRCUIT JUDGE DEBOLT
    IN PLACE OF FREAR, C.J., DISQUALIFIED.

A lessee covenanted to pay "all taxes which may be imposed upon"
    the demised premises during the term and two sublessees in turn
    covenanted that "all taxes upon the demised premises * * * to-
    gether with the improvements and crops thereon shall be paid
    by lessee without claim against the lessor." Held, that the sub-
    lessees are liable to pay, in addition to the taxes on their own
    interest in the demised premises, not only the taxes on the inter-
    est therein of the original lessor but also the taxes on the inter-
    est of the lessee.

OPINION OF THE COURT BY PERRY, J.

This is a submission on the following agreed facts:

B. F. Dillingham, the holder of a certain lease from James
Campbell of the lands and property known as Kahuku and
Honouliuli on this island, executed to W. R. Castle a lease of
certain portions of Honouliuli and to J. B. Castle a lease of
certain portions of Kahuku, and thereafter Dillingham con-
veyed all of his interest in the first mentioned lease as well
as all interests arising thereout to the Oahu Railway and Land
Company, and W. R. Castle conveyed all of his interest in
the Honouliuli lease to the Ewa Plantation Company and J. B.
Castle all of his interest in the Kahuku lease to the Kahuku

Plantation Company.   Each of the plantation companies owns a sugar plantation situated on the premises demised to it. The Oahu Railway and Land Company uses a portion of the remaining premises described in the lease to Dillingham as a cattle ranch and has sublet other portions to various persons and corporations.

"III.   The Territory of Hawaii acting under and by virtue of Act 31 of the Session Laws of 1896 (Chapter 59, Civil Laws 1897) has assessed and collected the following taxes relative to the premises described in Exhibit A" (the lease to Dillingham) "on the various interests therein or connected therewith:

"(a)   To James Campbell and the estate of James Campbell the sum of $3200 each year from the year 1898 to the year 1902 inclusive, which taxes have been paid in the first instance by said James Campbell or the Trustees of his estate and have been repaid to said James Campbell or the Trustees of his estate by the Oahu Railway and Land Company acting, as is claimed by said Company, under and by virtue of the covenant on the part of the lessee respecting taxes contained in said Exhibit 'A'.

"(b)   To The Oahu Railway and Land Company on account of its leasehold interest in all the premises described in said Exhibit 'A' the following sums:   Taxes for the year 1898, $2000; taxes for the year 1899, $3000; taxes for the year 1900, $2500; taxes for the year 1901, $2060; taxes for the year 1902, $2004.05, which taxes have been paid to the Hawaiian Government by said Oahu Railway and Land Company, acting as is claimed by said company under duress of law and to prevent a tax sale of said premises and to preserve its leasehold estate from forfeiture.

"(c)   To Ewa Plantation Company and Kahuku Plantation Company as enterprises for profit under Sec. 820 of said Chapter 59, Civil Laws 1897, various sums in which the value of said lands for cane growing and other purposes were considered, which sums have been paid to the Hawaiian Government by said Ewa Plantation Company and Kahuku Plantation Company, respectively.

"The said Ewa and Kahuku Plantation Companies have always admitted their liability to pay their due proportion of the taxes assessed against James Campbell or James Campbell's Estate on realty and paid to the said James Campbell or

the said James Campbell's Estate by the said Oahu Railway and Land Company. But said Ewa Plantation Company and the said Kahuku Plantation Company deny that they are liable by any covenant in their leases to pay any part or share of the amount assessed against the said Oahu Railway and Land Company as its leasehold interest, as set forth in Section (b) of the foregoing paragraph, and upon demand by the Oahu Railway and Land Company have refused to pay the same or any part thereof."

The question submitted is "whether by virtue of the provisions and covenants" in the leases, "the said Ewa Plantation Company and the said Kahuku Plantation Company are liable to the Oahu Railway and Land Company for any portion or share of the moneys paid as taxes by the Oahu Railway and Land Company to the Hawaiian Government upon its leasehold interest, as set forth in Section (b) of paragraph III. herein."

The lease to Dillingham is for the term of fifty years from January 1, 1890, at a rental of $20000 for the first year, $30000 for the second year and $40000 for each year thereafter, and contains a covenant by the lessee that he "will pay all taxes which may be imposed upon said premises during said term" and a provision authorizing forfeiture in the event of failure by the lessee to perform any of his covenants; that to W. R. Castle is for the term of forty-nine years and eleven months from January 1, 1890, at a rental consisting of a percentage of the produce of the land but to be not less than $5000 for any one year, and contains a provision that the lessee may, if water for the purposes of a sugar plantation cannot be obtained, surrender the lease without liability for damages therefor and a covenant by the lessee that "all taxes upon the demised premises excepting such portion thereof as shall not have been fenced and taken possession of by the lessee together with the improvements and crops thereon shall be paid by lessee without claim against the lessor"; and that to J. B. Castle is likewise for the term of forty-nine years and eleven months from January 1, 1890, at a rental, not less than $5000 for any one year, to be ascertained as in the case

of the W. R. Castle lease, and contains a covenant by the lessee that "all taxes upon the demised premises together with the improvements and crops shall be paid by the lessee, his representatives or assigns, without claim against lessor, his representatives or assigns."

It is conceded that the two plantation companies are in the same position, concerning the covenants by the lessees, as their assignors, W. R. Castle and J. B. Castle, would have been in had they not assigned the leases and also, as appears on the face of the submission, that they are liable under the provisions concerning taxes to pay, in addition to the taxes assessed against themselves, the taxes on the interest of the original lessor, Campbell, in the land. The only question is whether they, the two plantation companies, are liable to pay the taxes on the interest of the Railway company in the land covered by the leases to them.

In our opinion, the sublessees are so liable. The main argument against this view is that the instruments executed by Dillingham to the Castles are not in reality leases but merely contracts to establish sugar plantations and that therefore what has been taxed against the Railway Company is its interest in the profits from the production of sugar and not an interest in the land. That what Dillingham executed to each of the Castles was a lease would seem to be settled by the terms of the submission. The parties there allege that Dillingham "executed and delivered to W. R. Castle a *lease* of certain portions of said Honouliuli * * * and also * * * to James B. Castle a *lease* of certain portions of Kahuku * * * and thereafter * * * W. R. Castle also conveyed all his interest *in said Honouliuli lease* to the said Ewa Plantation Company and said J. B. Castle also conveyed all of his interest *in said Kahuku lease* to the said Kahuku Plantation Company * * *. Said Ewa Plantation Company and Kahuku Plantation Company are owners of sugar plantations situated upon the premises *demised* to them respectively." But even if the contention may be made consistently with the terms of the submission, still we are clearly of the opinion that the instruments

in question are leases. In each of them the one party is called the *lessor* and the other party the *lessee;* the apt words, "demise and lease" are used; and the right to the possession, use and profits of the land, for a period of years, is passed and rent, and not merely certain payments in lieu of rent as claimed by the defendants, is reserved as recompense therefor. The covenants and other provisions of the lease all tend to show an intention to make a present demise for the term named.

The railway company has an interest in the land. It has the reversion for the period of one month and was given, in the W. R. Castle lease, the power and the duty to accept a surrender of the property upon the happening of a certain contingency; it has the power to enforce the covenants in the leases; and it enjoys the excess of rents received by it from the sublessees over and above the rent paid by it to the original lessor. That interest is none the less an interest in land merely because our tax statute classifies leasehold interests, for purposes of taxation, as personal property. It is taxable at its full cash value, whatever that value may be; and in the submission the parties state that it is upon the "leasehold interest" of the railway company "in all the premises described in said Exhibit A" (which includes the subleased premises) that the taxes in question were imposed and paid. It seems clear to us that this interest may have a substantial cash value, but what that value is or whether or not it has been overvalued in the past are questions which have not been submitted to us for determination; nor have we been asked to say what proportion of the taxes paid by the railway company upon its interest in all of the land covered by the Campbell lease should be borne by the plantation companies as the tax upon the portions subleased to them.

As we read the subleases, the provision in each of them relating to taxes was intended and is sufficiently expressed to be a covenant, and is not, as claimed by the defendants, merely a direction concerning the method of computation of the share of the profits due to Dillingham or the Oahu Railway and

Land Company. It was the intention of the parties to make it clear that, upon whomsoever the duty and the burden might primarily be as between the government and individuals, *all* of the taxes upon the property subleased, that is to say, upon all three interests, should as between the lessor, the lessee and the sublessees, be paid by the sublessees.

It is no defense that the taxes were not assessed upon the subleased portions of land separately. The private agreement of the parties was not binding on the assessor and the latter was under no obligation to make a separate assessment by reason of such agreement.

The question submitted is answered in the affirmative.

*Hatch & Ballou* for plaintiff.

*Castle & Withington* for defendant.