In the Matter of the Tax Appeal of GRAYCO LAND ESCROW, LTD. and HAWAIIAN RANCHOS, INC., dba KBSF LAND CO., INC., Taxpayers

NO. 5846

JANUARY 14, 1977

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY KOBAYASHI. J.

This appeal by Grayco Land Escrow, Ltd. (Grayco) and Hawaiian Ranchos, Inc., dba KBSF Land Co., Inc. (KBSF) is taken from an order denying motion to amend findings of fact

and conclusions of law and from the final judgment of the Tax Appeal Court which determined that Grayco was liable for general excise taxes, penalty and interest assessed against interest income Grayco derived from installment contracts of the sale of land located in the County of Hawaii, State of Hawaii.

We affirm.

ISSUES

The issues on appeal are:

(1)  Whether interest income received by a vendor, who is a domiciliary of California, from the sales of subdivided property located on the Island of Hawaii under agreements of sale, executed out-of-state, is subject to the general excise tax of the State of Hawaii; and whether, if applicable, the general excise tax must be apportioned pursuant to the Constitution of the United States and the laws of the State of Hawaii.

(2)  Whether Grayco, as trustee who holds legal title to the fee simple property and who executed the agreements of sale as vendor, is liable for the general excise tax.

(3)  Whether Grayco established reasonable cause for its failure to file a general excise tax return within the purview of HRS § 231-39(b) (1).

STATEMENT OF THE CASE

The facts of the case were stipulated, and the stipulations of fact were incorporated into the findings of fact of the tax appeal court.

Grayco, a California corporation, having its principal place of business in Pasadena, California, has been registered as a foreign corporation authorized to do business in the State of Hawaii pursuant to HRS Chapter 418 (Foreign Corporations Generally) since March 27, 1969. Grayco is not licensed to do business pursuant to HRS Chapter 237 (General Excise Tax Law). At no time has Grayco had a place of business or any employees in Hawaii.

Prior to December 1971, KBSF, a Delaware corporation,

had its principal place of business in Beverly Hills, California; thereafter, its principal offices were moved to Boston, Massachusetts. Although KBSF is licensed to do business in Hawaii, the record is unclear as to what HRS chapter KBSF is registered under.

By deed dated June 27, 1969, KBSF conveyed fee simple title of 4002.2916 acres of land[1] situated in the District of Kau, County and State of Hawaii, to Grayco, as trustee. The deed was recorded in Liber 6604, page 242, Hawaii Bureau of Conveyances. The unrecorded trust agreement, otherwise referred to as "Subdivision Agreement No. 152" and under which Grayco holds legal title to the above property, is dated June 24, 1969, and was twice amended and restated on October 15, 1969, and on December 23, 1970, respectively.

The Subdivision Agreement of June 24, 1969, was made between Grayco, KBSF and Commonwealth United Corporation (Commonwealth) and was for the benefit of Commonwealth as first beneficiary to secure indebtedness owed to it by KBSF in the amount of $5,400,000, which was used to purchase the land and paid for initial subdivision improvements. The $5,400,000 note, dated December 31, 1968, was secured by a mortgage on the Hawaii property in question.

The above Subdivision Agreement was amended and restated on October 15, 1969, to include R. J. Beaumont and Associates (Beaumont), a California corporation, having its principal place of business in Beverly Hills, California. As a senior beneficiary, Beaumont's interest arose from its activity as the exclusive real estate broker in the promotion and sale of the Hawaii property pursuant to a listing agreement dated October 15, 1969, through which Beaumont was to receive a percentage of every lot sold. Sales and marketing activities for the period December 1, 1969 to November 30, 1971,[2] included the following:

---

[1] The parcel of land was subsequently subdivided into 1,229 lots of which 1,179 are subject to agreements of sale.

[2] The terms of the listing agreement were made irrevocable until December 31, 1971, unless terminated sooner pursuant to provisions in the listing agreement.

(a) *In the State of Hawaii*. Advertisements of the availability of subdivided lots for sale were made through the use of newspapers, radio, and television facilities located in Hawaii, and the United States mail. Beaumont engaged licensed Hawaii real estate sales persons to contact prospective purchasers and to sell lots.

(b) *In the State of California*. Advertisements of the availability of subdivided lots for sale were made through the use of newspapers, radio, and television facilities located in California, and the United States mail. Also, direct mail offerings were made by Beaumont to residents of states other than California.

On March 11, 1970, Exeter Equities (Exeter), a Massachusetts limited partnership with its principal place of business in Boston, Massachusetts, succeeded to the interests of Commonwealth. On October 5, 1970, Exeter, by agreement with the shareholders of KBSF, purchased all of the issued and outstanding stock of KBSF in return for a release of the shareholders from their liability for the indebtedness secured by the Subdivision Agreement.

The Subdivision Agreement was again amended and restated on December 23, 1970, to include Dow Banking Corporation (Dow), a banking corporation established and maintained under the laws of Switzerland with its principal place of business in Zurich, Switzerland. As first beneficiary, Dow's interest arose from the advancement of funds to complete subdivision improvements on the land. Dow was paid in full on July 29, 1973, and no longer has any interest under the trust agreement. Exeter, having succeeded to the interests of Commonwealth, is the second beneficiary. Beaumont's interest as a senior beneficiary remained the same. KBSF, whose interest arose as the owner of the property prior to transfer in trust to Grayco, is the third and principal beneficiary under the trust agreement.

The trust arrangement is required under sections 2814, et. seq., of the California Administrative Code for the sale of subdivided land under an agreement of sale in the State of California. Section 2814.6(a) of the California Administrative

Code requires that "record title to the property which is subject to the contract of sale" be transferred in trust "prior to or concurrently" with the execution and delivery of the contract of sale to the contract vendee. Under the circumstances of the case; it appears that title to the property was vested in Grayco prior to any sale of the property and prior to any substantial subdivision improvements.

Upon sale of a lot, Grayco, as vendor, and the conditional ·contract vendee execute a standard form agreement for sale of real property under which the purchaser paid the purchase price in installments, including interest on the unpaid principal balance. Under the provisions of the trust, Grayco, as trustee, receives monthly principal and interest payments from the purchasers of the lots at its office in Pasadena, California. All payments under the sales contracts are deposited in a California bank and are ultimately distributed to the beneficiaries of the trust on a weekly basis. The trust corpus consists of these contracts of sale of land, income therefrom, and unsold lots.

Purchasers were offered an "Aloha Bonus Plan" which entitled the vendee to travel to Hawaii to view the property within a period of two (2) years from the date of the agreement of sale. Between April, 1970 and August, 1973, 256 purchasers viewed their lots under the plan. The purchaser would meet a real estate sales person, a subagent employed by Beaumont, in Kailua, Kona, Hawaii, who would drive him to his lot and return him to Kailua, Kona. The sales person would sign a receipt and give it to the purchaser. Upon the purchaser sending the receipt to Grayco, Grayco would credit the purchaser's balance owing on the principal in the amount of $400.00.

When a purchaser has performed all of the terms of the agreement of sale, Grayco advises the purchaser by mail that the contract has been fully performed, that it will issue a deed in the purchaser's name, inquires whether the purchaser desires title insurance, advises the purchaser of the cost of insurance and recording, and requests the

purchaser's directions and check in the necessary amount. If title insurance is requested, Grayco sends the deed to Title Guaranty of Hawaii with the purchaser's check and requests recordation of the deed and issuance of title insurance to the purchaser. If no insurance is required, Grayco mails the deed directly to the Bureau of Conveyances for recording. The deed is thereafter mailed to the purchaser. Each unrecorded agreement of sale provided for a $1,000.00 minimum cash down payment and the balance of the sales price to be paid in monthly installments of not less than $100.00 at 7% interest per annum for a term of 17 to 19 years. Grayco pays itself out of such cash receipts the amount due it for its services and, in addition, pursuant to Article XV.1 of the trust agreement, for "all taxes, assessments, insurance costs, charges, attorney's fees, expenses incurred or expended with BENEFICIARIES consent in the care, management, administration, protection and/or distribution of all or any part of the TRUST ESTATE for the payment of which the TRUST ESTATE and/or [Grayco] may become chargeable, including the protection of this Trust and its defense against legal attack."

The Director of Taxation (Director), State of Hawaii, on March 10, 1973, mailed a Notice of Assessment of Additional General Excise Tax to Grayco assessing taxes, penalty and interest in the total amount of $56,298.83 on interest income derived from the sale of its property situated on the Island of Hawaii. On October 1, 1973, Grayco paid the taxes under protest and commenced the action herein on review on October 18, 1973. The Tax Appeal Court upheld the assessment by the Director in the amount of $53,085.99. Judgment in favor of Grayco was given in the amount of $3,212.84 which represented taxes, penalty and interest erroneously assessed.

## OPINION

IS INTEREST INCOME RECEIVED BY A VENDOR, WHO IS A DOMICILIARY OF CALIFORNIA, FROM THE SALES OF SUBDIVIDED PROPERTY LOCATED ON THE ISLAND OF HAWAII UNDER AGREEMENTS OF SALE, EXECUTED OUT-OF-STATE, SUBJECT TO THE GENERAL

EXCISE TAX OF THE STATE OF HAWAII; AND, IF APPLICABLE, MUST THE GENERAL EXCISE TAX BE APPORTIONED PURSUANT TO THE CONSTITUTION OF THE UNITED STATES AND THE LAWS OF THE STATE OF HAWAII?

Hawaii's general excise tax is imposed by Chapter 237, Hawaii Revised Statutes, and section 237-13 provides in part:

There is hereby levied and shall be assessed and collected annually privilege taxes against persons on account of their business and other activities in the State measured by the application of rates against values of products, gross proceeds of sales, or gross income, whichever is specified, as follows:

. . . .

The types of businesses and activities which are subject to the tax are then enumerated. HRS § 237-13(1)-(9).

Section 237-13(10) imposes a privilege tax on "other businesses" equal to four per cent of the gross income:

(10) . . . [u]pon every person engaging or continuing within the State in any business, trade, activity, occupation, or calling *not included in the preceding paragraphs or any other provisions of this chapter.* . . . In addition, the rate prescribed by this paragraph shall apply to a business taxable under one or more of the preceding paragraphs or other provisions of this chapter, as to any gross income thereof not taxed thereunder as gross income or gross proceeds of sales or by taxing an equivalent value of products, unless specifically exempted.

Thus, in plain and unmistakable language the statute evidences the intention of the legislature to tax every form of business, subject to the taxing jurisdiction, not specifically exempted from its provisions. *See Brodhead v. Borthwick,* 37 Haw. 314 (1946); *reh. denied* 37 Haw. 351 (1946); *aff'd* 174 F.2d 21, *cert. denied,* 338 U.S. 847 (1949).

Thus, the initial and primary issue is whether Grayco, as trustee, legal title holder to and vendor of the subdivided property on the Island of Hawaii, was ". . . engaging or continuing within the State in any business, trade, [or] activity . . ." within the meaning of HRS § 237-13(10).

HRS § 237-2 specifies what constitutes "business for purposes of chapter 237.[3] That section provides:

§ 237-2 *"Business"*, *"engaging"* *in business, defined.* "Business" as used in this chapter, includes all activities (personal, professional, or corporate), engaged in or caused to be engaged in with the object of gain or economic benefit either direct or indirect, but does not include casual sales.

The term "engaging" as used in this chapter with reference to engaging or continuing in business also includes the exercise of corporate or franchise powers.

In its Findings of Fact and Conclusions of Law, the Tax Appeal Court stated:

. . . .

2. Grayco contends that it was not doing business in the State and hence is not liable for the tax assessed herein. The Court disagrees. The Court finds that Grayco is engaged in the business of investing capital in the State of Hawaii within the meaning of the Supreme Court's holding in *Hawaiian Beaches v. Kondo*, 52 Haw. 279 [474 P.2d 538] (1970). The fact that Grayco is not a domiciliary of the State does not alter the validity of the tax as contended by plaintiffs. The tax is on the privilege of engaging in business activity in the State regardless of domicile. Accordingly, the Court concludes that the assessment is valid and proper.

In *Hawaiian Beaches, supra,* the appellants, Hawaii corporations, were assessed general excise taxes on interest income derived from the sales of its lands situated on the Island of Hawaii. In interpreting the exemptions from gross

---

[3] Appellants' reference to HRS chapter 418 for the determination of what constitutes "doing business" within the State is inappropriate as "significantly more business activity is required for qualification purposes than for taxing jurisdiction." In re Tax Appeal of Heftel Broadcasting Honolulu, Inc., 57 Haw. 175, 180 n. 4, 554, P.2d 242, 246 n. 4 (1976); *Three Kinds of Doing Business,* 23 Corp. Journal 163, 164 (1961).

income under HRS § 237-3,[4] this court held that " '[i]nterest' is mentioned as one of several items comprising 'all receipts' and not as an inclusion of 'gross receipts.' " *Id.* at 282, 474 P.2d at 540. We further stated that "interest received on an agreement of sale of land in fee simple does not come within the 'gross receipts from the sale of land in fee simple.' " *Id.* at 282, 474 P.2d at 541.

Similar to the case at hand, the agreements of sale were made and executed out-of-state and the installment payments, including interest, were also made out-of-state. This court, however, held that that fact did not deny Hawaii "the right to tax interest received by a domiciliary 'by reason of the investment of the capital of the business' in Hawaii." *Id.* at 283, 474 P.2d at 541.

The appellants contend that *Hawaiian Beaches* separated the capital outlay for land development from lending credit on installment payment agreements. As stated in appellants' opening brief at pages 16-17:

---

[4] HRS § 237-3, in relevant part, states:

§237-3 *"Gross income", "gross proceeds of sale", defined.* "Gross income" means the *gross receipts*, cash or accrued, of the taxpayer received as compensation for personal services and the gross receipts of the taxpayer derived from trade, business, commerce, or sales and the value proceeding or accruing from the sale of tangible personal property, or service, or both, and *all receipts*, actual or accrued as hereinafter provided, by reason of the investment of the capital of the business engaged in, *including interest*, discount, rentals, royalties, fees, or other emoluments however designated and without any deductions on account of the cost of property sold, the cost of materials used, labor cost, taxes, royalties, interest, or discount paid or any other expenses whatsoever. . . .

"Gross proceeds of sale" means the value actually proceeding from the sale of tangible pers ...al property without any deduction on account of the cost of property sold or expenses of any kind.

The words "gross income" and "gross proceeds of sales" *shall not be construed to include: gross receipts* from the sale of bonds or other evidence of indebtedness or stocks or, except as otherwise provided, *from the sale of land in fee simple,* improved or unimproved, dividends as defined by chapter 235; cash discounts allowed and taken on sales: the proceeds of sale of goods, wares, or merchandise returned by customers when the sale price is refunded either in cash or by credit; or the sale price of any article accepted as part payment on any new article sold, if the full sale price of the new article is included in the "gross income" or "gross proceeds of sales". . . . (Emphasis added.)

> In order to reach its ruling on the exemption issue, the Hawaii Supreme Court divided the agreement of sale transaction into its component economic parts of a sale of an interest in land and an extension of credit to finance the sale. . . . Thus, the activity in *Hawaiian Beaches*, *supra*, which produced the gross receipts subject to taxation under HRS Chapter 237, was not the selling or the improvement of land, but the extension of credit which in fact and in law produced the interest proceeds. . . .

The appellants further contend that they are involved in an interstate lending activity and, thus, argue that "the relevant inquiry must be as to the situs of the lending activity" pursuant to the holding in *Hawaiian Beaches*.

We do not agree with appellants' contentions nor their interpretation of *Hawaiian Beaches*, *supra*. *Hawaiian Beaches* simply separated the selling price of the lot (gross receipts) from interest earned under the agreements of sale. And we held that "by reason of the investment of the capital of the business" engaged in by the taxpayer, *i.e.*, the development and sale of land, the interest earned therefrom is taxable gross income. We did not hold "by reason of the investment of capital" to mean "lending credit" as a new transaction or component. In enacting HRS § 237-3, which defines gross income as "the gross receipts . . . derived from . . . sales . . . and all receipts . . . by reason of the investment of the capital of the business engaged in, *including interest* . . ." (emphasis added) the legislature specifically and explicitly mentions the inclusion of interest "as one of several items comprising 'all receipts' and not as an inclusion of 'gross receipts.'" *Hawaiian Beaches, Inc. v. Kondo, supra,* at 282 474 P.2d at 540. In *Hawaiian Beaches* we were dealing with an exemption and held that interest from agreements of sale does not fall within the exemption of "gross receipts from the sale of land in fee simple."

The appellants' classification of their business transaction as a "lending activity" was similarly addressed by the court in *Clifford v. State*, 78 Wash. 2d 4, 469 P.2d 549 (1970). Aside from not finding any support in the language of the

statute[5] for this proposition, the Washington Supreme Court stated:

> The particular business activity of the appellants which is taxed is that of permitting deferred payment for the real estate which it sells. * * * Making a loan and taking a land contract as security is not the same activity as selling a piece of land and accepting the payment in installments. In one activity, money is advanced. In the other, no money is advanced by the seller; rather he relinquishes the right to immediate payment. This is a sufficient distinction in fact to justify the difference in tax treatment. . . . [Id. at 8, 469 P.2d at 551].

We have no hesitancy whatsoever in declaring that the transaction involved herein is not a separate transaction constituting a lending activity.[6]

A state's power to impose a privilege tax on a foreign corporation within its jurisdiction is well settled; and the fact that it is not a domiciliary of the taxing state is of little consequence. See *Gross Income Tax Division v. Bartlett*, 228 Ind. 505, 93 N.E.2d 174 (1950), *appeal dis.* 340 U.S. 924 (1951); 71 Am. Jur. 2d, *State and Local Taxation*, § 574, p. 838; *see also Tax Appeal of Heftel Broadcasting Honolulu, Inc.*, 57 Haw. 175, 554 P.2d 242 (1976). The tax involved is not discriminatory in that it treats all similarly situated "whether the individuals are residents or nonresidents of the State." HRS § 237-1(2). Furthermore, it should be noted that the assessment is based on the privilege or activity of doing business within the State and not on the fact of domicile.

---

[5] Prior to the 1970 amendment, RCW 82.04.400 read, in pertinent part:

This chapter shall not apply to national banks, state banks, trust companies, *** mutual savings banks, building and loan and savings and loan associations with respect to their banking, trust, or savings and loan business *** but shall apply with respect to their engaging in any other business taxable hereunder, even though such other business is conducted primarily for the purpose of liquidating the assets thereof.

[6] The essence of appellants' argument is premised on the assertion that it is engaged in an interstate lending activity. Since we have concluded that no lending activity, either intrastate or interstate, was involved, appellants' reliance upon authority based on lending activities is inappropriate.

However, a due process question, *i.e.*, whether extending HRS § 237-13(10) to Grayco violates due process because of a lack of "nexus" between the State and the transactions involved, must first be determined.

In *Wisconsin v. J. C. Penney Co.*, 311 U.S. 435 (1940), Wisconsin's gross receipts tax for the privilege of carrying on a local business was imposed on a Delaware corporation with its principal place of business in New York. In upholding the tax, the United States Supreme Court stated at page 444:

> The Constitution is not a formulary. It does not demand of states strict observance of rigid categories nor precision of technical phrasing in their exercise of the most basic power of government, that of taxation. For constitutional purposes the decisive issue turns on the operating incidence of a challenged tax. A *state is free to pursue its own fiscal policies, unembarassed by the Constitution, if by the practical operation of a tax the state has exerted its power in relation to opportunities which it has given, to protection which it has afforded, to benefits which it has conferred by the fact of being an orderly, civilized society.*
>
> . . . We cannot, however, be too often reminded that the limits on the otherwise autonomous powers of the states are those in the Constitution and not verbal weapons imported into it. "Taxable event," "jurisdiction to tax," "business situs," "extraterritoriality," are all compendious ways of implying the impotence of state power because state power has nothing on which to operate. These tags are not instruments of adjudication but statements of results in applying the sole constitutional test for a case like the present one. That test is whether property was taken without due process of law, or, if paraphrase we must, *whether the taxing power exerted by the state bears fiscal relation to protection, opportunities and benefits given by the state. The simple but controlling question is whether the state has given anything for which it can ask return.* The substantial privilege of carrying on business in Wisconsin, which has here been given,

clearly supports the tax. and *the state has not given the less merely because it has conditioned the demand of the exaction upon happenings outside its own borders*. The fact that a tax is contingent upon events brought to pass without a state does not destroy the nexus between such a tax and transactions within a state for which the tax is an exaction. [Citations omitted] (Emphasis added.)

It is conceded that "certain governmental benefits" were bestowed upon Grayco in Hawaii including "roads, police and fire protection". The appellants, however, contend that the imposition of the general excise tax on its ownership of the property and the imposition of a real property tax amount to a double tax. This contention is without merit or basis. The tax in question is levied upon the privilege or activity of doing business within the state and not upon the property of the taxpayer. It is measured, not by the value of the property, and thus, creating an ad valorem tax, but by the income realized by the particular activity engaged in by the taxpayer within the state. As was aptly stated by the United States Supreme Court in *Ohio Tax Cases*, 232 U.S. 576 (1914) at pages 593-94:

> . . . [T]he exaction of four per cent of the gross intrastate earnings is not a property tax but an excise tax, whose amount is fixed and measured by such earnings; and double taxation in a legal sense does not exist unless the double tax is levied upon the same property within the same jurisdiction. Plaintiffs in error pay one tax with respect to property, another with respect to the privilege or occupation; hence the taxation is not double. [Citations omitted].

*See also Clifford v. State, supra*. Thus, it is clear that the imposition of both an excise tax on a privilege or activity and an ad valorem tax on the value of property is not invalid as the taxes are imposed on separate incidents. *See New York ex rel. Cohn v. Graves*, 300 U.S. 308 (1937).

We believe that. under the facts of this case, there was sufficient business activity by Grayco in this State to justify the privilege tax. Further, Grayco benefits not only from

"road, police and fire protection" of the State, but also utilizes the State's recording offices, laws, courts and other opportunities, protection and benefits of the State. *Hawaiian Beaches v. Kondo, supra.*

Appellants argue, however, that if the general excise tax is found to be applicable "apportionment of the tax is required" because "the lending transaction[7] in question constituted commercial activity in interstate commerce in that there were lending transactions involving a California domiciled lender and borrowers domiciled in California, Hawaii and other state and foreign countries." Appellants contend that an unapportioned tax on the interest income would "include within its measure a substantial amount of income attributable to activity outside the State of Hawaii and would subject interstate commerce to the burden of multiple and cumulative taxation."

The Director contends that "apportionment is not needed because the income is derived from sources within the State." With this we agree.

It is a universal principle of law that real property is exclusively subject to the law of the country or state within which it is situated. *Sunderland v. United States*, 266 U.S. 226 (1924); *Assessor v. Commercial Pacific Cable Co.*, 16 Haw. 396 (1905); *Gross Income Tax Division v. Bartlett, supra;* 16 Am. Jur. 2d *Conflicts of Laws*, § 14. *See also Smith v. Smith,* 56 Haw. 295, 535 P.2d 1109 (1976). Therefore, all matters concerning taxation of such realty, title, alienation, and the transfer of such realty and the validity, effect, and construction which is to be accorded agreements intending to convey or otherwise deal with such realty are determined by the doctrine of *lex loci rei sitae,* that is, the law of the place where the land is located. *Munday v. Wisconsin Trust Co.*, 252 U.S. 499 (1920); *United States v. Crosby*, 11 U.S. (7 Cranch) 115, 116 (1812); *see County of Kauai v. Holt*, 17 Haw. 146 (1905); *see also Hilo Sugar Co. v. Minister of Finance*, 7 Haw. 665

---

[7] As noted earlier, appellants' argument is based on the false premise that it is engaged in a "lending activity". See discussion preceding footnote 6.

(1889) and *Carter v. Hill*, 31 Haw. 264 (1930); 71 Am. Jur. 2d, *State and Local Taxation*, § 650; 16 Am. Jur. 2d, *Conflicts of Laws* § 15; Restatement 2d, *Conflicts of Laws*, § 222 (1971); 17 C.J.S. *Contracts*, § 17; 91 C.J.S. *Vendor and Purchaser* § 3. Executory contracts for the sale of land, such as the agreements of sale involved herein, are therefore governed by the law of the place where the real property is located. *Gross Income Tax Division v. Bartlett, supra;* 16 Am. Jur. 2d, *Conflicts of Laws*, § 15.

The United States Supreme Court in *Curry v. McCanless*, 307 U.S. 357, 363-64 (1939), reiterated this doctrine stating:

That rights in tangibles — land and chattels — are to be regarded in many respects as localized at the place where the tangible itself is located for purposes of the jurisdiction of a court to make disposition of putative rights in them, *for purposes of conflict of laws, and for purposes of taxation,* is a doctrine generally accepted both in the common law and other legal systems before the adoption of the Fourteenth Amendment and since. \*\*\* The power of government and its agencies to possess and to exclude others from possessing tangibles, and thus to exclude them from enjoying rights in tangibles located within its territory, affords adequate basis for an exclusive taxing jurisdiction. When we speak of the jurisdiction to tax land or chattels as being exclusively in the state where they are physically located, we mean no more than that the benefit and protection of laws enabling the owner to enjoy the fruits of his ownership and the power to reach effectively the interests protected, for the purpose of subjecting them to payment of a tax, are so narrowly restricted to the state in whose territory the physical property is located as to set practical limits to taxation by others. . . ." (Emphasis added.)

In upholding the legality of the tax,[8] the court, in *Gross*

---

[8] Indiana's gross income tax law is similar to our general excise tax except that the proceeds of the sale of land are included in the gross income of the taxpayer. This

*Income Tax Division v. Bartlett. supra,* concluded that the sale of land located in Indiana constituted sufficient activity to justify the tax upon the gross proceeds of the nonresident. The court found that the income was derived from sources in Indiana and, quoting from a previous case, stated:

"We conclude that the tax in question [gross income tax] is an excise, levied upon those domiciled within the state or who derived income from sources within the state, upon the basis of the privilege of domicile or the privilege of transacting business within the state, and that the burden may reasonably be measured by the amount of income. The reasoning which justifies the tax upon the basis of domicile as readily supports and justifies a tax upon the basis of the right to receive income within, or transact business under the protection of, the state. We feel that the weight of reason and authority sustains this view." *[Id.* at 511, 93 N.E.2d at 177].

The court then proceeded to discuss two constitutional questions that invariably arise in any discussion of multi-state taxation — the due process and commerce clauses of the federal Constitution.

As to whether the assessment of the gross income tax on the principal and interest unconstitutionally infringed upon the due process clause of the federal Constitution, the Indiana Supreme Court held that the assessment did not. *Id.* at 512, 93 N.E.2d at 177. The court stated that "immovable property is exclusively subject to the laws of the government

---

difference in fact is not determinative of the present issue under discussion.
Indiana's gross income tax provides in part by section 2:

(m) The term "gross income," except as hereinafter otherwise expressly provided. means the gross receipts of the taxpayer received *** from the sale of property, tangible or intangible, real or personal. or service. or any or all of the foregoing, and all receipts by reason of the investment of capital, including interest, discount, rentals, royalties. fees. commissions or other emoluments, however designated. and without any deductions on account of the costs of property sold, the cost of materials used, labor cost, interest or discount paid, or any other expense whatsoever. and without any deduction on account of losses; ***. [Citations omitted.].

in which it is located." [Citations omitted.] *Id.* at 512. 93 N.E.2d at 177.

With respect to the commerce clause of the federal Constitution, the court stated in 228 Ind. at 511-12, 93 N.E.2d at 177:

"It should also be remembered that contracts between citizens of different states are not subjects of interstate commerce where the performance of the contract is to be completed and carried out wholly within the borders of the state, even though such contracts may affect interstate commerce, [citations omitted] and *the appellee cannot escape the tax by billing from the outside or by setting up his machinery so that the income from the sale is paid to it from another state.*" [Citations omitted.]

. . . .

Only such commodities as may in the ordinary course of events become subjects of purchase and sale on their movement from one state to another state are articles of commerce under the Commerce Clause of the Constitution, art. 1, § 8, cl. 3, [citations omitted] and the decision of the lower court, which in this case holds real estate to be the subject of interstate commerce, is not sustained by the authorities. [Citations omitted.] (Emphasis added.)

The Hawaii apportionment statute is embodied in HRS § 237-21 which provides, in part:

§237-21 *Apportionment*. If any person . . . is engaged in business both within and without the State . . . and *if under the Constitution or laws of the United States the entire gross income of such person cannot be included in the measure of this tax.* there shall be apportioned to the State and included in the measure of the tax that portion of the gross income which is derived from activities within the State, to the extent that the apportionment is required by the Constitution or laws of the United States. In the case of a tax upon the production of property in the State the apportionment shall be determined as in the case of the tax on manufacturers. In other cases, if and to the extent that the apportionment cannot be accurately made

by separate accounting methods, there shall be apportioned to the State and included in the measure of this tax that proportion of the total gross income, so requiring apportionment, which the cost of doing business within the State, applicable to the gross income, bears to the cost of doing business both within and without the State, applicable to the gross income. (Emphasis added.)

The above quoted apportionment statute is only applicable when the entire gross income cannot be constitutionally included in the measure of Hawaii's general excise tax. It is clear that the taxable event in this case was the receipt of interest income derived from the sale of land located in Hawaii under agreements of sale and the taxable income here involved consists entirely of such receipts. Accordingly, apportionment is not necessary under the circumstances of this case. *See Hawaiian Beaches, Inc. v. Kondo, supra.*

IS GRAYCO, AS TRUSTEE WHO HOLDS LEGAL TITLE TO THE FEE SIMPLE PROPERTY AND WHO EXECUTES THE AGREEMENTS OF SALE AS VENDOR, LIABLE FOR THE GENERAL EXCISE TAX?

The Hawaii general excise tax is imposed upon "every person engaging or continuing within the State in any business, trade, [or] activity. . . ." HRS § 237-13(10).

HRS § 237-1, *inter alia,* defines "person" to include:

. . . every individual, partnership, society, unincorporated association, joint adventure, group, hui, joint stock company, corporation, *trustee,* executor, administrator, *trust estate,* decedent's estate, *trust, or other entity, whether such persons are doing business for themselves or in a fiduciary capacity, and whether the individuals are residents or nonresidents of the State,* and whether the corporation or other association is created or organized under the laws of the State or of another jurisdiction. Any person who has in his possession, for sale in the State, the property of a nonresident owner, other than as an employee of such owner, shall be deemed the seller of the property, when sold. (Emphasis added.)

Grayco contends that it is not the proper taxpayer in that it

is merely a "passive trustee" of a "flow through"[9] trust holding bare legal title to the property and has "no beneficial interest under the trust agreement in the land or trust corpus, except a lien for its fees and advances." Grayco argues that KBSF is the proper taxpayer under the category of "trust estate" or "other entity" pursuant to HRS § 237-1. Grayco further contends that since KBSF is entitled to exclusive possession of the property so long as it is not in default to the other beneficiaries, and since, under the provisions of the trust agreement, KBSF has "the exclusive responsibility to subdivide, improve and sell the land". . . including the obligation to pay taxes", KBSF should be the proper taxpayer.

We find Grayco's contentions without merit. HRS § 237-1 clearly and unambiguously provides for the tax liability of a trustee holding property for another whether he is in business for himself or in a fiduciary capacity and whether he is a resident or nonresident of this State. The statute makes no differentiation between a trustee holding bare legal title and one that does not. The statute also makes no differentiation between a trustee of a passive or dry trust and an active trust. "The construction or interpretation of a statute may be indulged in only in case of ambiguity or uncertain meaning. Where, as in this case, the language is plain and unmistakable, there is no room for construction — there is nothing to construe," *Hawaiian Hotels v. Borthwick*, 35 Haw. 788, 794 (1941); and, thus, it must be given its "plain and obvious meaning." *Hawaii Consolidated Railway v. Borthwick*, 34 Haw. 269, 272 (1937). The Court is bound by the plain, clear and unambiguous language of the statute. *University of Hawaii v. Leahi Foundation*, 56 Haw. 404, 537 P.2d 1190 (1975).

Grayco's claims that it is merely a passive trustee who holds legal title is not convincing. Title to the property was

---

[9] Appellants' reliance upon the Internal Revenue Code is inappropriate. The Internal Revenue Code specifically excepts a "flow through" trust from the general rule that the income of a trust estate is taxable to the fiduciary. Mertens, *Law of Federal Income Taxation*, Vol. 6, §§ 36.18, 36.19 (1975). No comparable statutory exception is found in HRS Chapter 237.

vested in Grayco prior to any sale of the property and prior to any substantial subdivision improvements. Pursuant to the trust agreement, Grayco has substantial duties in respect to the collection of payments and cancellation of the agreements of sale. Payments under the agreements of sale, which are executed by Grayco as vendor, are made to Grayco. Grayco is under a duty to deposit all gross receipts in a separate bank account and not to co-mingle these funds with its own separate funds. If an account becomes delinquent, Grayco is under a duty to notify the purchaser of the property and beneficiaries under the trust. Furthermore, Grayco declares defaults and "of its own accord, may cancel any contract which is more than 90 days delinquent." Full and complete reports on the status of the trust estate must be given to the beneficiaries monthly. Upon payment in full of a sale of property for cash, Grayco executes a grant deed to the purchaser entitled thereto or purchaser's nominee. Appellants cannot seriously contend that Grayco's duties are purely ministerial or passive.

The fact that KBSF is under a duty to pay all taxes assessed on the property pursuant to the trust agreement is also of no effect.[10] The trust agreement between the various parties is not binding on the taxing authority or determinative of the tax consequences. *See In re Taxes Kobayashi*, 44 Haw. 584, 358 P.2d 539 (1961); *Hilo Sugar Co. v. Tucker*, 8 Haw. 148 (1890). To hold otherwise would create havoc for the taxing authorities. "The private agreement of the parties was not binding on the assessor and the latter was under no obligation to make a separate assessment by reason of such agreement." *Oahu Railway and Land Co. v. Ewa Plantation Co.*, 15 Haw. 318, 323 (1903). Accordingly, we find Grayco, as trustee and legal owner[11] of the property in question, liable

---

[10] Under the trust agreement, Grayco may reimburse itself for "all taxes, assessments . . . for the payment of which the trust estate and/or trustee may become chargeable, including the protection of [the] trust and its defense against legal attack."

[11] The definition of "legal owner" is stated in *Black's Law Dictionary*, 4th Ed. (1968) at page 1260:

for the assessment of the general excise tax.

DID GRAYCO ESTABLISH REASONABLE CAUSE FOR ITS FAILURE TO FILE A GENERAL EXCISE TAX RETURN WITHIN THE PURVIEW OF HRS § 231-39(b) (1)?

In addition to the assessment of the general excise tax, Grayco was assessed a 25% penalty by the Director pursuant to HRS § 231-39(b) (1), which provides:

> (b) There shall be added to and become a part of the tax imposed by such tax or revenue law, and collected as such:
>
> > (1) Failure to file tax return. In case of failure to file any tax return required to be filed on the date prescribed therefor (determined with regard to any extension of time for filing), *unless it is shown that the failure is due to reasonable cause and not due to neglect,* there shall be added to the amount required to be shown as tax on the return five per cent of the amount of the tax if the failure is for not more than one month, with an additional five per cent for each additional month or fraction thereof during which the failure continues, not exceeding twenty-five per cent in the aggregate. . . . (Emphasis added.)

Thus, it is clear that the penalty is to be imposed unless the failure to file a tax return is "due to reasonable cause and not due to neglect." Section 6651(a) of the Internal Revenue Code is quite similar to HRS § 231-39(b) (1) in that it provides for an addition to the tax for failure to file a return on the prescribed date unless it is shown that such failure is due to reasonable cause and not neglect.

"Reasonable cause" has been interpreted to mean no more than the exercise of ordinary business care and prudence. *In re Fisk's Estate v. Commissioner of Internal Revenue,* 203 F.2d 358 (6th Cir. 1953); *Haywood Lumber & Min-*

---

Legal owner. One who is recognized and held responsible by the law as the owner of property. In a more particular sense, one in whom the legal title to real estate is vested, but who holds it in trust for the benefit of another, the latter being called "equitable" owner.

*ing Co. v. Commissioner of Internal Revenue*, 178 F.2d 769 (2d Cir. 1950). However, a mere showing of absence of willful neglect is insufficient to avoid the penalty. *West Virginia Steel Corporation v. Commissioner*, 34 T.C. 851 (1960). The issue is one of fact and the burden of proving reasonable cause is on the taxpayer. *Breland v. United States*, 323 F.2d 492 (5th Cir. 1963); *Lee v. Commissioner of Internal Revenue*, 227 F.2d 181 (5th Cir. 1955); *William J. Lemp Brewing Co. v. Commissioner*, 18 T.C. 586 (1952); *Paymer v. Commissioner*, 150 F.2d 334 (2d Cir. 1945); Mertens, *Law of Federal Income Taxation*, Vol. 10, § 55.23 (1976).

Grayco maintains that its failure to file the tax return was "due to reasonable cause and not due to neglect" for two reasons.

Grayco contends, as its first basis for justifying the failure to file a return, that it "reasonably believed" that it was not responsible for the tax since it was a "flow through" trust. Grayco further contends that, on the basis of correspondence with the Director, it had satisfied the requirements of Hawaii law. Correspondence between Grayco and the Director occurred between January 15, 1970 through March 9, 1970 and January 14, 1973 through January 23, 1973. In response to the Director's inquiries about activities concerning sales of Hawaii land and Grayco's responsibility for the general excise tax, Grayco continuously maintained that it was a "flow through" trust and that KBSF was the proper taxpayer.

Grayco's second basis was in its belief that tax liability was uncertain. Grayco relies on *Fairfax Mutual Wood Products Co. v. Commissioner*, 5 T.C. 1279 (1945). An examination of the Tax Court's opinion shows that in contrast to the instant case, there were, in addition to the taxpayer's belief, other circumstances sufficient to prove reasonable cause. *Fairfax* involved a taxpayer who contended that it was a personal service corporation pursuant to Internal Revenue Code § 725(a) and thus, was entitled to be exempt from excess profits tax. A question was also presented as to whether the taxpayer was subject to a 25% penalty for its failure to file an

excess profits return. The court held that the taxpayer was not a personal service corporation and further determined that, under the circumstances of the case, the taxpayer's failure to file an excess profits tax return was due to reasonable cause and not to willful neglect. The taxpayer had "discussed fully the matter of making returns with the local collector and his subordinates and was told to file the income tax return and attach thereto a statement explaining the operation of the business and the basis for the corporation's claim." *Id.* at 1283. The taxpayer, following the tax collector's advice attached a detailed statement regarding the operation of its business and an explanation of the absence of the excess profits tax return to its return. We infer that the Tax Court relied upon these additional circumstances in holding that the failure to file the return was due to reasonable cause.

To meet its burden of proof, appellants must show the presence of other supporting circumstances, in addition to its honest belief, that it was not responsible for the tax. This was aptly stated by the court in *Handley Motor Co. v. United States*, 338 F.2d 361, 366 (1964):

> It is generally recognized that the presence of certain factors, in addition to the honest belief of the taxpayer, constitutes reasonable cause for the failure to file a return, *e.g.*, the advice of a competent accountant or attorney; *Mayflower Investment Co. v. Commissioner*, 239 F.2d 624 (5th Cir. 1956); *Hatfried, Inc. v. Commissioner*, 162 F.2d 628 (3d Cir. 1947); or reliance on the statements of an Internal Revenue agent, *Druggists' Supply Corp.*, 8 T.C. 1343 (1947).

Absent reliance on competent counsel or the Director or his representative. Grayco's erroneous belief that it had no taxable income that would necessitate the filing of a return, was not reasonable cause. *Eleanor C. Shomaker v. Commissioner*, 38 T.C. 192 (1962); *Beck Chemical Equipment Corporation v. Commissioner*, 27 T.C. 840 (1957).

We conclude that the evidence offered by the appellants is insufficient to meet its burden of proving reasonable cause.

*John P. Gillmor (Gary L. Wixom* with him on the briefs; *Case,.Stack, Kay, Clause & Lynch* of counsel) for Taxpayers, appellants.

*Alana W. Lau,* Deputy Attorney General, for Director of Taxation, appellee.