SHORTESS, Judge.
Ashland Oil, Inc. (Ashland), a Kentucky corporation licensed to do business in Louisiana,[1] was audited for the years 1977 through 1980 by the Collector of Revenue, Department of Revenue and Taxation (DRT), and issued a proposed assessment *703 of additional occupational license tax[2] in the amount of $30,000.00 exclusive of interest and penalties.[3]
The occupational tax was assessed against Allied Oil Company, a division (not separately incorporated) of Ashland Oil, Inc. Allied’s principal place of business is Cleveland, Ohio. It owns no property nor maintains any office in Louisiana.
Ashland (hereinafter, all reference to “Ashland” will mean the Allied division) appealed DRT’s assessment to the Board of Tax Appeals, the agency vested with jurisdiction to review DRT decisions. LSA-R.S. 47:1401 and 1407. The Board of Tax Appeals affirmed DRT’s assessment. Ash-land appealed that decision in accordance with LSA-R.S. 47:1434 to the Nineteenth Judicial District Court, East Baton Rouge Parish. LSA-R.S. 47:1436(4) (providing jurisdiction of appeals from corporate taxpayers having no principal office or agency in Louisiana to the district court for East Baton Rouge Parish). The Nineteenth Judicial District Court, with written reasons, affirmed the order of the Board of Tax Appeals. Ashland has brought this appeal and assigns as error:
I. The District Court erred in finding that Allied Oil Company was engaged in the conduct of business activity in Louisiana.
II. The District Court erred in finding that an occupational tax for the privilege of engaging in interstate commerce can be levied against a company which has no corporate presence whatsoever in the state of Louisiana.
There is no serious dispute as to the facts. DRT concedes that Ashland maintains no office in Louisiana; that the transactions upon which it based its assessment were confected outside Louisiana; and that there is no office, telephone listing, nor any Ashland employees in Louisiana.
Former LSA-R.S. 47:341 imposed a tax upon “each person pursuing any trade, profession, vocation, calling or business in this state....” The Board of Tax Appeals found that Ashland came within the ambit of LSA-R.S. 47:341. The district court affirmed the Board of Tax Appeals’ decision, astutely concluding that:
[T]he fulcrum on which the state’s case rests is the fact that the occupational license tax is required for persons who “carry on business in the state.” None of the facts which distinguish Wells Fargo from this case are controlling. The controlling fact is that Allied takes title to certain products from Ashland when the products are unloaded at the flange of the ship and “simultaneously” passes title to its customer as the product is offloaded. This activity takes place in Louisiana; Allied receives more money from its customer than it pays to Ash-land. Therefore, it follows that an activity occurs in Louisiana wherein Allied makes a profit and it is the opinion of this Court that such constitutes “carrying on business in the state” sufficient to require [appellant] to obtain an occupational license tax in Louisiana under LSA-R.S. 47:341 and 386.
Ashland was a buyer and seller of heavy fuel oil. Its agreement with buyers and sellers contemplated delivery at the flange between the tanker upon which the oil was transported and the terminal (whose services were purchased on a per-barrel basis) at St. Rose, Louisiana. Ash-land sold the fuel oil subject to this audit to Consolidated Edison, an Illinois utility. Delivery was effected at the flange between the tanker and the terminal. Ashland argues that this is not the conduct of business within the meaning of LSA-R.S. 47:341 because:
[b]usiness activity consists of the positive actions of real people, not the theoretical and simultaneous vesting, divesting, and [revesting] of title to a flowing stream of product moving in a continuing journey through the state of Louisiana.
*704 Juridical as well as “real” persons engage in business activity. The raison d'Ure of most juridical persons is the conduct of business activity. The essence of the conduct of business is the buying and selling of goods in commerce. Ashland purchased and sold goods in the State of Louisiana. Ashland contracted the services of the terminal as well as an inspection firm responsible for measuring the flow of fuel oil at the flange to enable Ashland to determine the quantities it had purchased and sold.
The Civil Code recognizes that the transfer of ownership is not dependent upon delivery but rather the agreement between the parties. LSA-C.C. art. 2456. Commentary suggests, however, that there are exceptions:
When the thing that is the subject matter of the obligation to give, is determined solely in kind as in commercial sales fixed in terms of quantity or in the sale of a certain number of square meters of land. The transfer becomes operative only when the quantity sold has been measured and set aside, or delivered and accepted by the purchaser, so that it becomes a specific thing.
1 M. Plainol, Traite Elementaire de Droit Civil § 2597 (11 ed. 1939) (La.St.L.Inst. trans 1959) (citation omitted).
The delivery to Ashland and its subsequent delivery to its purchaser were therefore operative events which occurred in Louisiana. Notwithstanding the existence of LSA-C.C. art. 10,[4] Louisiana has abandoned the rule of lex loci contractus in favor of the “interest analysis” as that concept is articulated in the Restatement, Second, Conflict of Laws (1969). Jagers v. Royal Indemnity Co., 276 So.2d 309 (La.1973). Performance was to be made in Louisiana and only upon performance was the object of both the purchase agreement and the sale to become definite. Additionally, Ashland contracted with an independent service firm to be present at the terminal in St. Rose, Louisiana, to measure the fuel oil. These facts would weigh in favor of the application of Louisiana law to an action for breach of these contracts in the absence of a contractual choice of law stipulation, had Ashland availed itself of a Louisiana court.[5]
Had there been a fire at the St. Rose terminal, police and fire services would have been provided by the State of Louisiana or a political subdivision thereof. Had the fuel oil spilled during unloading operations the Louisiana wetlands would have suffered and the appropriate state authorities would have been forced to deal with the problem.
We believe that the privileges and protections Ashland could have availed itself of coupled with the fact that it made more than incidental or isolated purchases and sales of fuel oil is sufficient to qualify as pursuing business in this state under the broad language of former LSA-R.S. 47:341. Collector of Revenue v. Wells Fargo Leasing Corp., 393 So.2d 1244, 1246-48 (La.1981).
With regard to the assignment of error that appears to assert Louisiana’s occupational tax violates the Commerce Clause of the United States Constitution, a state may levy taxes fairly proportional, non-discriminatory, and fairly related to the services provided by the state upon interstate commerce. Mobil Oil Corp. v. Commissioner of Taxes, 445 U.S. 425, 100 S.Ct. 1223, 1234, 63 L.Ed.2d 510 (1980). When the state has provided benefits and protection for activities within its borders it is justified in exacting a “fair and reasonable return.” Wells Fargo, 393 So.2d at 1247. We believe that the availability to Ashland of Louisiana courts and the various protections afforded by the state or its political subdivisions, whether or not such privileges and protections have been taken advantage of, justify the imposition of the tax at issue here.
*705 For the reasons expressed, the judgment of the trial court is affirmed. Costs of this appeal are assessed against Ashland Oil, Inc.
AFFIRMED.

. The pleading styled "Petition for Judicial Review of the Board of Tax Appeals’ Decision and Judgment” avers license to do business in Louisiana.

. The state Occupational License Tax, LSA-R.S. 47:341, was repealed by Acts 1981, No. 567, § 1. The scheme now contemplates implementation at the parish and municipal levels.

. The total assessment, including a delinquent penalty of $7,500.00 and interest accrued as of June 15, 1981, was $47,850.00.

. Amended by Acts 1987, No. 124, now LSA-C.C. 15.

. We by no means intend to say that Louisiana law would apply. The facts regarding the contract and the parties are not sufficiently developed to make such a determination and, moreover, one is not necessary to this decision.